**PENN CENTRAL CORPORATION, a Pennsylvania Corporation, Plaintiff,**

v.

**CHECKER CAB COMPANY, a Michigan Corporation; Charles P. Lightfoot and Lawrence Whitlock, jointly and severally, Defendants.**

Civ. A. No. 79–70344.

United States District Court, E. D. Michigan, S. D.

May 14, 1980.

T. Patrick Durkin, Detroit, Mich., for plaintiff.

Richard L. Braun, II, Detroit, Mich., John J. Schrot, Jr., Birmingham, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on defendants' motion for summary judgment. On May 2, 1980, this court heard oral arguments on this motion and made an oral ruling denying defendants' motion. This memorandum opinion sets forth the reasoning of that ruling.

*FACTS*

On January 30, 1976, three employees of plaintiff Penn Central Corporation were passengers of a cab operated as a Checker Cab, driven by defendant Lawrence Whitlock, and owned by defendant Charles Lightfoot. According to plaintiff, cab transportation was arranged for the employees so that they could get from a railroad yard in Detroit to one in Monroe. During the course of the trip, the cab collided with a tractor-trailer and all three employees sustained injuries.

The injured employees made claims against plaintiff for compensation for their injuries. Plaintiff settled these claims on September 26, 1977, and on April 17, 1978. In consideration for settlement amounts paid, the employees executed general releases of all claims arising out of the accident. Specifically named in the releases were plaintiff, defendants Checker Cab and Lawrence Whitlock, and all other parties in interest.

On February 7, 1979, plaintiff instituted this action against defendants seeking indemnification for amounts paid in settlement and for the expenses incurred in defending its employees' claims. Plaintiff alleges that defendant Whitlock breached certain duties owed to it and its employees by causing or allowing the cab to collide with the tractor-trailer. The liability of defendant Checker Cab is predicated on the breach of its duties to hire competent drivers, inspect mechanical parts of the cab, and

to instruct its drivers as to highway regulations and statutes. Plaintiff alleges that as a result of these two defendants' negligence its employees were injured. The liability of defendant Lightfoot is predicated solely on M.C.L.A. § 257.401, the civil liability statute making owners of cars liable for injuries sustained due to the negligent operation of the car by a third party with the owner's consent.

Plaintiff's theory of recovery in this case is based on two assertions. First, plaintiff claims that it was legally liable for its employees' injuries under the Federal Employers Liability Act, 45 U.S.C. § 51 *et seq.*, and the cases construing that Act. Second, plaintiff asserts that it is entitled to indemnification from defendants because as between the plaintiff and the defendants, defendants were "actively" negligent in causing the injury to the plaintiff's employees, while plaintiff was liable to the employees merely as a "passive" wrongdoer. Plaintiff's claim for indemnity rests on Michigan law.

Defendants' motion for summary judgment asserts three general and independent grounds for a ruling that they are not liable to plaintiff. First, defendants assert that plaintiff is not entitled to indemnification under Michigan law because (a) there was no contract of indemnity between plaintiff and defendants; (b) defendants are independent contractors and not agents of plaintiff; and (c) plaintiff, by breaching its nondelegable duty to its employees to provide a safe place to work, is not entitled to indemnity under Michigan law. Second, defendants assert that plaintiff's suit is barred by the statute of limitations. Finally, defendants assert that any recovery granted to plaintiff must be limited by the provisions of Michigan's No-Fault Act.

Defendant does not appear to contest plaintiff's assertion that plaintiff was liable to its employees for the injuries sustained in the cab accident. For the purposes of this motion; therefore, the court will assume that plaintiff was so liable. It is useful, however, to examine the legal basis

**1228**

for this liability, as it aids in putting the issues presented by defendants' motion in perspective.

■ Liability of a railroad to its employees extends to injuries sustained in the course of the employer's operational activities. It has been held that an employer may be liable under the provisions of the Federal Employer's Liability Act for torts committed by an independent contractor, so long as the contractor is performing work which constitutes an operational activity of the employer. Such a contractor is, in the words of the Supreme Court, an "agent" of the employer within the meaning of 45 U.S.C. § 51. *Sinkler v. Missouri Pacific R. Co.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). The concept of "operational activity" was again applied in *Hopson v. Texaco, Inc.*, 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1962). There it was held that the employer's use of cab transportation for its employees constituted part of its operational activity, rendering the employer liable for injuries sustained by the employees in an accident involving the cab in which they were passengers. *Leek v. Baltimore & Ohio R. Co.*, 200 F.Supp. 368 (N.D.W.Va.1962).

■ Thus, it is clear that where a railroad utilizes cab services to transport its employees, these services can constitute an operational activity of the railroad, thus rendering the railroad liable for injuries sustained by the employees in the course of the cab transportation.

■ While the railroad's liability to its employees is governed by F.E.L.A., its ability to recover its losses by way of indemnification is governed by state law. *Eades v. Union Railway Co.*, 396 F.2d 798 (6th Cir. 1968), *cert. denied* 393 U.S. 1020, 89 S.Ct. 262, 21 L.Ed.2d 564 (1969), *Am. Employers' Ins. Co. v. Yellow Cab Co.*, 49 Ill.App.3d 275, 7 Ill.Dec. 657, 364 N.E.2d 948 (1977). Thus the merits of defendants' contentions regarding the availability of indemnification, the statute of limitations, and the effect of the No-Fault Act must all be tested under Michigan law.

## INDEMNIFICATION

■ Defendants argue that plaintiff is not entitled to indemnity under Michigan law because they were independent contractors and not agents of plaintiff, and because no contract of indemnity, express or implied, was entered into between the parties. The law in Michigan is clear, however, that neither agency nor contract is required to be established in order to state a viable claim for indemnification. *Dale v. Whiteman*, 388 Mich. 698, 202 N.W.2d 797 (1972).

■ In *Dale*, the Michigan Supreme Court expressly recognized a cause of action for indemnification in the absence of a contract of indemnity. The court noted that indemnity has, in the past, been granted due to a special relationship between the indemnitee and indemnitor, such as a bailment. Such a relationship is not required, however, as *Dale* makes clear.

> [T]here are a number of cases in which the right to be indemnified is based upon the theory that the party entitled to indemnification was a "passive" tort feasor as opposed to the "active" tort of some other party. *Id.* at 705, 202 N.W.2d at 800.

Under Michigan law, the party seeking indemnity must prove freedom from personal fault, and this has been interpreted to mean that the person seeking indemnity must be free of active or causal negligence. *Provencal v. Parker*, 66 Mich.App. 431, 436, 239 N.E.2d 623 (1976), and the cases cited therein. Thus, where liability arises solely by operation of law, such as in *Dale*, the liable party may seek indemnification from the party whose wrongdoing caused the primary injury.

Defendants argue that plaintiff is not entitled to indemnification because plaintiff breached its nondelegable duty to its employees to provide a safe place to work. Defendants refer to the provisions of 45 U.S.C. § 51, and state that plaintiff could not possibly have been liable to its employees unless it was negligent:

Every common carrier by railroad . . shall be liable in damages . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . .

Defendants then argue that because negligence is a prerequisite to F.E.L.A. liability, and because a negligent plaintiff is not entitled to indemnity under Michigan law, defendants are entitled to summary judgment as a matter of law.

■ This "Catch-22" into which defendants attempt to insert plaintiff's legal theory of recovery lacks a logical basis. As noted above, a railroad's liability under F.E.L.A. is governed by federal law, while the right to indemnification is governed by state law. While the presence or absence of negligence on the part of the railroad is essential to various aspects of plaintiff's legal theory, the concept of negligence is not one which has identical meaning in both federal and state law. In other words, plaintiff may be negligent under federal law, but this "negligence" may not be of such a dimension as to bar indemnity under state law.

Plaintiff asserts that the nature of the negligent conduct which rendered it liable to its employees was its breach of its nondelegable duty to provide a safe place to work.

A railroad has the nondelegable duty to provide an employee with a safe place to work. This is so despite the fact that it may not own, control or be under a primary obligation to maintain the premises on which the employee is injured. A railroad is not relieved from liability because such premises are unsafe or because of the existence of an unsafe condition brought about through the act of another and *without fault, on the railroad's part.*

\* \* \* \* \* \*

If [a railroad] does delegate and relies upon the services of its agent to carry out its duty, it may not shift its liability from itself to said agent *when an employee seeks to hold it directly liable. Under FELA the employer is the one owing the duty to the employee. The employee need not look elsewhere for his protection. He has a right under FELA to rely on his employer and none other. Payne v. Baltimore & Ohio R. Co.,* 309 F.2d 546 (6th Cir. 1962), *cert. denied* 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963). Emphasis added.

■ Thus, vis-a-vis its employees, a railroad does have an obligation to maintain a safe work environment. When sued by its employees, a railroad cannot defend on the ground that negligent acts performed by third parties in the course of its operational activities were the actual cause of the injuries. An employee has a right to seek and obtain recovery from his employer in this situation.

■ The liability imposed by F.E.L.A. on the railroad does not, however, require a finding of negligence on the part of the railroad under Michigan law. Indeed, the language of *Payne* contemplates legal liability without causal fault on the part of the railroad. Such liability serves the compensatory goals of F.E.L.A. To say that the basis of such liability automatically precludes indemnity under state law would neither serve the broad equitable goals of Michigan's indemnity law, nor comply with what this court understands to be the rulings of Michigan courts on the subject.

As noted above, Michigan courts have allowed indemnity where the plaintiff's legal liability to the injured party arose by operation of law, and where there was no contributory causal fault on the part of the plaintiff. The question in this case is whether the plaintiff railroad's legal breach of its duty to provide a safe place to work is of a sufficiently passive nature to allow indemnity under Michigan law. In the absence of a Michigan case dealing with this issue, this court must predict, on the basis of rulings in related areas, how the Michigan courts would rule.

 After a thorough examination of Michigan precedent on the availability of indemnity, this court is of the opinion that plaintiff in this case is not barred from seeking indemnification by reason of its breach of the duty to provide a safe work environment. The liability imposed by F.E. L.A. for this breach does not depend on the railroad's causal fault, and the railroad contends that there was none. Viewing the facts in the light most favorable to plaintiff, it appears that the active negligence causing the injuries to plaintiff's employees was that of defendants. Plaintiff had no control over how the cab was operated, by whom the cab was operated, or maintenance and inspection measures taken to insure the cab's operational safety. Under these circumstances, its liability to the employees, imposed by federal law to insure recovery for the employees, closely resemble the liability of the plaintiff in *Dale*. To the extent that the basis for this liability can be called "negligence," it is, at the most, passive negligence which does not bar plaintiff's right to indemnification under Michigan law. See, "Right of Railroad, Charged with Liability for Injury to or Death of Employee Under F.E.L.A., To Claim Indemnity or Contribution from Other Tortfeasor." 19 A.L.R.3d 928.

It is essential to reiterate the assumption on which this ruling is based. Plaintiff alleges that it was without any causal fault in connection with the accident. This court's ruling today goes no further than to state that where a railroad is liable under F.E.L.A. solely because it delegated its duty to provide a safe work environment, and where the injuries for which plaintiff is liable are due to no active malfeasance on the part of the railroad but rather to the active and causal negligence of third parties, the railroad is entitled to indemnification from those parties under Michigan law.[1]

## STATUTE OF LIMITATIONS

Defendants claim that plaintiff's cause of action accrued on the date of the accident, and that this suit is consequently barred by reason of the statute of limitations applicable to injuries to persons or property, M.C. L.A. § 600.5805(8). Defendants' argument thus raises the issue of when a cause of action for indemnity accrues under Michigan law.

 A limitations statute does not start to run until a person's cause of action "accrues."

> The claim accrues at the time . . . the wrong upon which the claim is based was done regardless of the time when damage results. M.C.L.A. § 600.5827.

In indemnity actions, the statute begins to run from the date on which the indemnitee suffered the loss. *Insurance Co. of N. Am. v. Southeastern Electric Co.*, 405 Mich. 554, 275 N.W.2d 255 (1979). In a situation where the indemnitee becomes liable to a third party, no "loss" is suffered until the indemnitee pays a judgment entered against it in favor of the third party, or until the indemnitee satisfies the third party's claim by a settlement payment. See *Owen v. Baxter Estate*, 97 Mich. 539, 56 N.W. 930 (1893); 41 Am.Jur.2d, Indemnity, §§ 32, 39; 42 C.J.S., Indemnity, § 25. The reason for this rule is rooted in common sense: until the indemnitee has satisfied his liability, no loss has been suffered, and no

1. In *Provencal v. Parker*, 66 Mich.App. 431, 239 N.W.2d 623 (1976), the Michigan Court of Appeals interpreted *Dale v. Whiteman*, 388 Mich. 698, 202 N.W.2d 797 (1972), as requiring active negligence on the part of the indemnitor. In other words, a passively negligent party was unable to obtain indemnification from another passively negligent party.

This court declines to accept that interpretation of *Dale*, as it does not appear to be grounded on the record on which the *Dale* case was decided. *Dale v. Whiteman*, 36 Mich.App. 533, 536 (1971). Moreover, liability should be placed on the party best situated to adopt preventive measures. *Dale v. Whiteman*, 388 Mich. at 706, 202 N.W.2d 797. As between the railroad in this case and the various defendants, the latter are best situated to adopt preventive measures. If it should be found that defendants are liable to plaintiff, they may explore the question of who, among themselves, was actively or passively negligent. The latter may then seek indemnity from the former.

wrong has been done to the indemnitee. Likewise, until his liability is satisfied, the full extent of the indemnitee's losses cannot be ascertained.

■ Plaintiff's action for indemnification, therefore, accrued when it satisfied its employees' claim by settlement. These payments were made within three years of the date on which the instant suit was filed. Accordingly, plaintiff's suit is not time barred.[2]

## NO–FAULT ACT

Defendants argue that plaintiff's ability to obtain indemnification for losses suffered is affected and limited by the provisions of Michigan's No-Fault Insurance Act, M.C.L.A. § 500.3101 *et seq.*, § 500.3135. Defendant premises this argument on the assertion that the rights of a railroad claiming indemnity based on F.E.L.A. liability can rise no higher than the rights which the injured employee may have had against the indemnitor. From this premise, defendant argues that the tort liability provision of the No-Fault Act, § 500.3135, operates to limit plaintiff's recovery in precisely the same manner that it would have if the injured employees had sued defendants directly. Defendants then conclude that plaintiff may not be indemnified for amounts paid in settlement which represent economic loss compensation, including medical expenses and lost wages. As the discussion below demonstrates, however, defendants' premise, reasoning, and conclusion are untenable.

It has been shown that while liability under F.E.L.A. is governed by federal law,

the employer's ability to seek indemnification is governed by state law. Thus, it is to Michigan law that we must turn in order to determine what effect, if any, the No-Fault Act has on this case.

Section 3135 of the No-Fault Act, M.C.L.A. § 600.3135, provides:

(2) notwithstanding any other provision of law, tort liability arising from the ownership, maintenance or use . . . of a motor vehicle . . . is abolished . . . .

The statute provides exceptions to the abolition of tort liability, allowing tort actions only for intentionally caused harm, noneconomic loss due to serious impairment of a bodily function or permanent serious disfigurement, and economic losses for expenses, work loss, and survivor's losses in excess of amounts which the statute designates as payable under a no fault policy. Thus, the question in this case is whether plaintiff can claim indemnity from a person allegedly causing a tort by the use of a motor vehicle for amounts the plaintiff has paid to those injured by a motor vehicle in settlement of its liability under the F.E.L.A. Stated in another way, does the Michigan no fault law which abolishes tort motor vehicle liability preclude indemnification from one who causes a motor vehicle accident, for liability incurred independently (F.E.L.A.) as a result of that accident? Plaintiff has not alleged that the settlement amounts for which it seeks indemnity compensated the employees for serious impairment of bodily function or permanent serious disfigurement or other losses as to which tort liability has not been abolished. Plaintiff takes the position that it need not

---

**2.** Although it is unnecessary to reach this question, there is considerable doubt that this suit for indemnification is governed by M.C.L.A. § 600.5805, as defendant contends. That statute applies to actions for injuries to persons or property, and a survey of Michigan case law in this area tends to indicate that plaintiff's suit for indemnification would be viewed by Michigan's courts as one for damages done to plaintiff's economic expectations. If this view were adopted, plaintiff's suit would be governed by

the six year period allowed in M.C.L.A. §§ 600.5807 and 600.5813. *Coats v. Uhlmann*, 87 Mich.App. 385, 274 N.W.2d 792 (1978); *Borman's Inc. v. Lake State Development Co.*, 60 Mich.App. 175, 230 N.W.2d 363 (1975); *George v. Petoskey*, 55 Mich.App. 433, 223 N.W.2d 6 (1974); *Tel-Twelve Shopping Center v. Sterling Garrett Const. Co.*, 34 Mich.App. 434, 191 N.W.2d 484 (1971); *Schenburn v. Lehner Assoc., Inc.*, 22 Mich.App. 534, 177 N.W.2d 699 (1970).

make any such allegation and need not prove such facts because the No-Fault Act has no effect on the scope of its allowable indemnification.

The defendant on the other hand asserts that the plaintiff's rights to be indemnified rise no higher than the rights of the injured persons who were paid the money for which the indemnity is claimed and that these persons have no rights to sue the defendant under Michigan law.

■ Contrary to defendants' assertion, it is not well settled under Michigan law that an indemnitee's rights can rise no higher than the rights of the party to whom he is liable. Indeed, the law is directly to the contrary.

■ In *Dale v. Whiteman, supra,* defendant Whiteman brought his car to a car wash owned by third party defendant Goldfarb. One of Goldfarb's employees, while driving the car, struck plaintiff Dale, another of Goldfarb's employees. Whiteman was found liable to Dale pursuant to Michigan's civil liability statute applicable to car owners, M.C.L.A. § 257.401. Whiteman, in turn, successfully sought indemnification from Goldfarb. The court held that Whiteman's indemnity claim was not barred by the exclusive remedy provision of the Worker's Compensation Act, despite the fact that the injured employee, plaintiff Dale, was barred by that provision from suing his employer directly. Thus, it is clear that an indemnitee's rights can rise higher than those of the injured party, at least in the type of situation presented in the *Dale* case.

The question remains, however, whether the reasoning and result in *Dale* should apply where the limiting legislation is the No-Fault Act rather than the Worker's Compensation Act. It could be argued that this statute should be given greater effect than the exclusivity provision of the compensation act, for while the latter simply makes compensation the *employee's* exclusive remedy, the No-Fault Act operates to abolish tort liability without qualification as to who the plaintiff might be. Such an

argument is of no avail to defendants, however, because plaintiff's cause of action in this case is for indemnification, not for tort damages. Thus, as the following discussion demonstrates, the no-fault statute does not apply in this case to bar a suit for indemnity.

■ In the absence of an express contract, the right to indemnification in Michigan "rest[s] upon the equitable principle of a right to restitution." *Dale v. Whiteman,* 388 Mich. at 704, 202 N.W.2d 797. In *Dale,* the Supreme Court noted the various legal theories on which indemnification has been granted. Without expressing an opinion on the propriety of characterizing an indemnity action as based on, e. g., an "implied contract," or a "special relationship between the parties," the Court granted indemnity in that case based on the equitable principle that the plaintiff was without personal fault and that "liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury." *Dale, supra,* at 706, 202 N.W.2d at 801, citing *Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., Inc.,* 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 742 (1964).

> This right of indemnity is based on the principle that everyone is responsible for his own negligence . . . It exists independently of statute, and whether or not contractual relations exist between the parties, and whether or not the negligent person owed the other a special or particular legal duty not to be negligent." *Dale, supra,* at 705–706, 202 N.W.2d at 800, citing 42 C.J.S. Indemnity § 21, p. 597.

In this case, plaintiff is seeking indemnification for the losses it suffered due to defendants' asserted negligence. Specifically, plaintiff seeks to recover the amounts it paid in settlement of its employees' claims, together with the expenses, including costs, interest, and attorney fees, incurred by plaintiff in defending those claims. It must be emphasized that plain-

tiff is not asserting a cause of action which is derivative of its employees' rights. If it were, plaintiff would be limited in its tort recovery to the exceptions enumerated in § 500.3135. Here, however, plaintiff is asserting its own cause of action, one rooted in equity, for the direct financial harm it suffered due to defendants' alleged negligence. Equity requires that one who is free from fault have the right to avoid the losses occasioned by another's wrongdoing. An action to enforce this right by seeking recovery for financial harm is not a tort action to which the limitations of § 500.3135 apply.

Moreover, the fundamental principle underlying the right to indemnity supports the conclusion that § 500.3135 should not affect plaintiff's right of recovery in this case. The availability of indemnity itself requires a showing of no contributing, causal fault on the part of the indemnitee. The notion that those whose wrongdoing causes harm should be responsible for that harm is deeply embedded in our system of law. By limiting an indemnitee's scope of recovery by the No-Fault Act, liability would be imposed despite the fact that the indemnitee in no way contributed to the harm done.

Finally, it must be noted that the benefits of the No-Fault Act which offset the abolition of tort liability are in no way available to a party such as Penn Central in this case. In the usual case, a person is entitled to insurance benefits under a no-fault statutory scheme without regard to fault. Thus, the drawbacks inherent in a fault insurance system, such as the risk of no compensation at all, significant delays, unpredictability, and malapportioned benefits, do not present themselves. An insured under a no-fault system trades, by legislative mandate, the right to traditional tort recovery with its attendant risks for the right to certain, prompt compensation. Defendants in this case, however, wish to impose on plaintiff the limitations of the no-fault system where plaintiff does not benefit from the system. In this case, the provisions of F.E.L.A. operated to make plaintiff liable for the total

injury suffered by its employees, and the employees looked only to plaintiff for their compensation. Under these circumstances, the provisions of the No-Fault Act do not operate to limit the extent of plaintiff's right to indemnification.

In accordance with the above, defendants' motion for summary judgment was properly denied.

So ordered.