No. 49,732

PAUL G. KENNEDY and ALICE C. KENNEDY, *Plaintiffs*, v. THE CITY OF SAWYER, KANSAS and GENE AUBLEY, *Appellants*, v. CONTINENTAL RESEARCH CORPORATION and HUGE COMPANY, *Appellees.*

(618 P.2d 788)

440

Opinion filed November 1, 1980.

*Steve R. Fabert,* of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause and was on the brief for the appellants.

*William A. Larson,* of Gehrt & Roberts, Chartered, of Topeka, argued the cause and was on the brief for the Continental Research Corporation, appellee.

*E. Lael Alkire,* of Alkire, Dwire & Wood, of Wichita, argued the cause, and *Loren H. Houk,* of the same firm, was with him on the brief for the Huge Corporation, appellee.

*Robert E. Keeshan,* of Scott, Quinlan & Hecht, of Topeka, was on the *amicus curiae* brief for the Kansas Trial Lawyers' Association.

*Larry Mundy,* of Eidson, Lewis, Porter & Haynes, of Topeka, was on the *amicus curiae* brief for the Kansas Association of Defense Counsel.

The opinion of the court was delivered by

FROMME, J.: This appeal comes to us on Petition for Review from the Court of Appeals. The Court of Appeals affirmed the trial court's orders which dismissed a third-party claim of the City of Sawyer and Gene Aubley against third-party defendant Continental Research Corporation and a similar claim of Continental against the Huge Company, Inc. *Kennedy v. City of Sawyer,* 4 Kan. App. 2d 545, 608 P.2d 1379 (1980). The third-party claim was filed in a negligence action.

The negligence action was filed by Paul G. and Alice C. Kennedy against the city and Mr. Aubley, city councilman. The

Kennedys owned fifty acres of pasture land adjacent to a 3.7 acre tract owned by the city on which are located sewage lagoons used and maintained for the benefit of the city. The 3.7 acre tract is fenced. The Kennedys had 53 head of cattle in their pasture adjacent to the sewage lagoons. Mr. Aubley, acting on behalf of the city, sprayed a herbicide solution along the fence surrounding the 3.7 acre tract. Three days later on July 20, 1975, the Kennedys found in their pasture six dead cattle and many others were sick. Examination of the cattle revealed they were victims of arsenic poisoning. The city's herbicide solution had been mixed by adding water to a chemical compound of sodium arsenite.

It appears that in 1973 a salesman for Continental Research Corporation examined the sewage lagoon area and recommended a chemical compound "CR-125" for use in weed control around the sewage lagoons. The CR-125 was shipped and received by the city sometime before April, 1974. Continental obtained this product from the Huge Company, Inc., which packaged and labeled it as a private label product of Continental. It was packaged by Huge in a metal drum which bore a use direction and warning label.

The label bore a skull and crossbones with the following warning:

"DANGER:
"DO NOT USE OR STORE IN OR AROUND THE HOME. DO NOT ALLOW DOMESTIC ANIMALS TO GRAZE TREATED AREAS. DO NOT RE-USE EMPTY DRUM. RETURN TO DRUM RECONDITIONER, OR DESTROY BY PERFORATING OR CRUSHING AND BURYING IN A SAFE PLACE."

The label further set forth the contents and description of the ingredients which were sodium arsenite—40.0% and inert ingredients—60.0%. Mixing instructions were given for both weed control and plant growth prevention.

In the petition filed by the Kennedys it was alleged that the city and Mr. Aubley "were negligent in not properly using, supervising the use of, storing and safeguarding the deadly arsenic compound used in the spray mixture herein which caused the Plaintiffs' loss." The defendant city and Mr. Aubley answered in part by stating "[p]laintiffs' alleged injuries and damages were proximately caused and contributed to by their own negligence." It is apparent from these allegations that the action raised issues of both negligence and contributory negligence. The damage to the

cattle occurred on or about July 17, 1975. Our comparative negligence statute, K.S.A. 60-258a, became effective July 1, 1974. Comparative negligence was not mentioned by any party in the pleadings or during later arguments on motions.

The defendant city and Mr. Aubley filed a third-party petition bringing Continental Research Corporation into the proceedings. They alleged that the weeds at the site of the city's sewage lagoons were sprayed by Mr. Aubley with the chemical CR-125; that the Kennedys alleged some of their cattle died and others were injured by ingesting the chemical; that the city and Mr. Aubley denied any liability but in the event it is established they were negligent in any manner so as to be liable to the Kennedys, their negligence was passive and secondary to the negligence of Continental Research Corporation; that Continental's negligence was active and primary negligence and the proximate and direct cause of the Kennedys' damages. The city and Mr. Aubley alleged they are entitled to judgment against Continental for all sums for which they may be liable to the Kennedys.

For this alleged liability of Continental the city and Mr. Aubley set forth three theories: (1) negligence in compounding, formulation, manufacture, testing, labeling, research, sale and distribution of CR-125, (2) breach of implied warranties to the city and Mr. Aubley, including warranty of merchantability and warranty of fitness for a particular purpose, and (3) under the doctrine of strict liability in tort the chemical CR-125 was in a defective condition unreasonably dangerous for use when it left the hands of Continental and was shipped to the city. The city and Mr. Aubley prayed for judgment against Continental for all sums for which they might be found liable to the Kennedys.

Continental Research Corporation then filed an answer as third-party defendant denying generally all such allegations of the city. It also filed a petition as third-party plaintiff against the Huge Company, Inc., alleging that Huge manufactured, packaged and labeled the chemical CR-125 for Continental; that in the event Continental is found negligent in any manner for which it would be liable to the city and Mr. Aubley, such negligence was passive and secondary to the negligence of Huge; that the action of Huge was primary negligence and the proximate and direct cause of the Kennedys' damages; and that Continental is entitled to judgment against Huge for all sums for which Continental may be found liable to the city and Mr. Aubley.

To establish this alleged liability of Huge, Continental set forth the identical theories pled by the city against Continental: (1) common law negligence, (2) breach of implied warranties, and (3) strict liability in tort for sale of a product in a defective condition unreasonably dangerous for use. It concluded with a prayer for judgment against Huge for all sums for which it might be found liable arising out of the matters alleged in the petition of the Kennedys.

Other parties in the chain of manufacture and distribution of CR-125 were brought into these proceedings but they were later relieved from participation on stipulation. Since the presence of those parties now has no bearing on the issues in this appeal, we see no reason to complicate the facts by further detailing their relationship to other parties in this action.

The parties answered interrogatories. Depositions were taken and then motions for summary judgment and to dismiss Continental and Huge from the lawsuit were filed. The issues were briefed and presented to the trial court. The comparative negligence statute was never mentioned. Comparative negligence principles played no part in the court's ultimate decision. On October 31, 1977, the court handed down a memorandum opinion followed by a formal journal entry on November 17, 1977. Later, on December 13, 1977, the court amended some of its previous findings of fact and conclusions of law. A notice of appeal from the two memorandum opinions and one journal entry was served on December 16, 1977.

In dismissing Continental and Huge from the proceedings, the trial court made certain findings of fact and refused to make others based upon what were referred to as uncontroverted facts. It found Mr. Aubley's actions in spraying the CR-125 on plaintiffs' pasture were negligent as a matter of law. It refused to make any finding as to the adequacy of the label on the CR-125 container, for it said the adequacy of the label did not enter into the court's decision to dismiss. It found that the defendant Aubley was guilty of active negligence in directing the spray so as to contaminate the pasture belonging to the Kennedys, and that on the basis of *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, 428 P.2d 783 (1967), it was impossible for the city to establish a right to indemnity from Continental. It then con-

cluded since Continental had no liability to the city for the Kennedys' damages, Continental had no right to indemnity against Huge. Both Continental and Huge were dismissed from the proceeding. The orders of dismissal were treated by the parties as a final appealable order and as if so declared by the court (see K.S.A. 60-254[b]), even though the Kennedys' claim was pending. This appeal was taken by the City of Sawyer and Mr. Aubley from the orders of dismissal. The notice of appeal was served December 16, 1977.

So, when the appeal was taken to the Court of Appeals, the comparative negligence of the parties in the action brought by the Kennedys against the city and Mr. Aubley was in issue in that case. The Kennedys had sued to recover damages caused by the negligence of Mr. Aubley and the city. Mr. Aubley and the city in their answer denied negligence on their part and alleged that the damages, if any, were a result of Kennedys' own negligence. At this same time the city, Mr. Aubley, Continental and Huge had on file third-party pleadings which raised questions as to who should be liable for the Kennedys' damages in the event recovery was had against the city and Mr. Aubley. This is the usual situation when comparative negligence principles apply. The parties, by oversight, should not be able to circumvent the statute, K.S.A. 60-258a.

While the appeal was pending the City of Sawyer settled the claim of Kennedys for $29,000.00. On January 27, 1978, the trial court entered an order of dismissal of the Kennedys' claim with prejudice. This was a month after the notice of appeal was filed. The journal entry quoted the following portions of the release by the Kennedys:

"Release and discharge, and by these presents do for plaintiffs, their heirs, executors, administrators, and assigns release and forever discharge the said *defendants and all other persons, firms, and corporations, both known and unknown, of and from any and all claims, demands, damages, actions, causes of action, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by anyone prior to and including the date hereof on account of all injuries both to person or property resulting, or to result, from an accident which occurred on or about the 17th day of July, 1975, near Sawyer, Kansas.*

"Plaintiff understands said defendants, by reason of agreeing to this compromise payment, neither admit nor deny liability of any sort, and said defendants have made no agreement or promise to do or omit to do any act or thing not herein set forth and plaintiffs further understand that this release is made as a com-

promise to avoid expense and to terminate all controversy and/or claims between plaintiffs and defendants for injuries or damages of whatsoever nature, known or unknown, including future developments thereof, in any way growing out of or connected with said accident." Emphasis supplied.

The appeal by the City of Sawyer and Mr. Aubley came to the Court of Appeals in this posture and on oral argument before the Court of Appeals the applicability of comparative negligence under K.S.A. 60-258a was raised by the Court of Appeals *sua sponte*. The trial court had dismissed the city's claim for indemnification based on principles set forth in *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251. The *Russell* case had been decided in 1967. Comparative negligence did not come into being until July 1, 1974. The active/passive dichotomy used in tort indemnity actions, which was recognized in *Russell,* has not been examined by this court in the light of the comparative negligence statute. We granted review and the appeal comes to us in this rather awkward position, the claim of the Kennedys having been dismissed after the appeal was taken.

At the outset it is questioned whether the original pleadings would support an action based on strict liability in tort. Our decision in *Brooks v. Dietz,* 218 Kan. 698, 545 P.2d 1104 (1976), embraced the doctrine of strict liability as set forth in the Restatement (Second) Torts § 402A (1965). The doctrine was applied to a design defect in a safety switch on a gas furnace manufactured by Bryant Air-Conditioning Co., Inc. Injury in such case was not to the homeowner or his family but to a plumber who was preparing to repair the furnace which he had installed seven years before. The Restatement § 402A, pp. 347, 348, specifies that "(1) One who sells any product in a defective condition unreasonably dangerous to the *user* or *consumer* or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property." Emphasis supplied. Recovery by *Brooks* was affirmed on the theory of strict liability.

In our present case the city was a user or consumer and there were no injuries to its person or property. The city's loss or damage, if any, was in the nature of economic loss occasioned to the property of a bystander or third party, the Kennedys. Imposition of liability for foreseeable injury to bystanders or third parties is based on a desire to achieve maximum protection for the injured party and to promote the public interest in discouraging

the marketing of products having defects that are a menace to the public. See Annot., 33 A.L.R.3d 415 (1970). Damage to be recoverable by a third party must be foreseeable. Foreseeability is that which is objectively reasonable to expect, not merely that which might conceivably occur. Under the doctrine of strict liability the liability of a manufacturer and those in the chain of distribution extends to those individuals to whom injury from a defective product may reasonably be foreseen, and then only in those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable it may be used. *Winnett v. Winnett,* 57 Ill. 2d 7, 310 N.E.2d 1 (1974); see also *West v. Caterpillar Tractor Company, Inc.,* 336 So. 2d 80, 89 (Fla. 1976); *Darryl v. Ford Motor Company,* 440 S.W.2d 630, 633 (Tex. 1969); *Wilcheck v. Doonan Truck & Equipment, Inc.,* 220 Kan. 230, 235, 552 P.2d 938 (1976).

In the present case, because of the dangerous nature of the product and its purpose, the damages were clearly foreseeable and the possibility of damage to grazing livestock was specifically mentioned on the warning label. However, settlement of the claim and dismissal of the Kennedys' action with prejudice removed the question of liability to the Kennedys, except as it might serve as a possible basis for the indemnity claim by the city, Continental and Huge respectively.

It is further questioned whether the third-party practice pleadings which were filed by the city, Continental and Huge were sufficient in form and content to raise questions of comparative negligence and indemnity. The pleadings were concerned with questions of indemnity in the event the Kennedys recovered for loss and damage to livestock caused by use of the chemical CR-125. K.S.A. 60-258a(*c*) provides:

"On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action."

No further directions are set forth in the statutes as to what pleadings are required after such a motion has been sustained. Good practice would dictate that the successful movant should file pleadings setting forth the basis for his claim that the other person's causal negligence contributed to the injury or damage to the plaintiffs. In turn the party brought into the action should file

an answer or other pleading. Under third-party practice (K.S.A.
60-214[a]) when a defendant wants to bring in a third party the
statute provides:

"At any time after commencement of the action a defending party, as a
third-party plaintiff, may cause a summons and complaint to be served upon a
person not a party to the action who is or may be *liable to him* [the third-party
plaintiff] for all or part of plaintiff's claim against him." Emphasis supplied.

It is contended the third-party pleadings between the city,
Continental and Huge were defective and not sufficient to raise
the issue of comparative liability for the Kennedys' damages. It is
argued that to raise comparative negligence the third parties,
when brought into the action, would have to respond by answer
concerning their degree of liability to the Kennedys, instead of
answering a claim for indemnity raised by the City of Sawyer and
Mr. Aubley.

Technically this may be correct, but Kansas has adopted notice
pleading and it is a rare occurrence when a pleading cannot be
corrected by amendment. Amended and supplemental pleadings
are to be liberally authorized. See K.S.A. 60-215. When permitted
an amendment relates back to the date of the original pleading. A
trial court is given broad discretionary power under K.S.A. 60-215
to allow amendment of pleadings, and amendments should be
permitted in the interest of justice. *Ballhorst v. Hahner-
Foreman-Cale, Inc.,* 207 Kan. 89, 92, 484 P.2d 38 (1971); *Rinsley
v. Frydman,* 221 Kan. 297, Syl. ¶ 2, 559 P.2d 334 (1977). This
court has gone so far as to permit a party to be brought into
proceedings after judgment so as to permit participation in appeal
proceedings. See *Moyer v. Board of County Commissioners,* 197
Kan. 23, 27, 415 P.2d 261 (1966).

In pleading a matter all that is required by the statute to
constitute a sufficient claim for relief is to give (1) a short and
plain statement of the claim showing that the pleader is entitled
to relief, and (2) a demand for judgment for the relief to which the
pleader *deems himself or herself entitled.* K.S.A. 60-208. See
*Collier v. Operating Engineers Local Union No. 101,* 228 Kan. 52,
Syl. ¶ 7, 612 P.2d 150 (1980). In our present case the parties were
brought into the case and the pleadings can be amended at the
discretion of the trial court in the interest of justice to cover the
issues to be decided.

The parties have fully briefed the questions having to do with

comparative negligence and tort indemnity. We have been favored with *amici curiae* briefs filed with leave by this court by both the Kansas Association of Defense Counsel and Kansas Trial Lawyers Association. We believe it is in the best interests of all concerned to disregard technicalities of pleading and proceed to examine the larger questions which concern the interests of these parties rather than sidestep the issues addressed by the Court of Appeals. The pleadings on file when the present appeal was taken presented questions arising from a products liability action. It was questioned whether comparative negligence principles should be applied to a product strict liability action and whether indemnity might be recovered. With a settlement of the Kennedys' claim the comparative negligence questions became secondary to the indemnity issue. However, even if it is only a collateral issue, we must determine whether comparative liability principles should apply in products liability actions.

The application of comparative fault principles to product strict liability actions has won the approval of an appreciable number of courts as is illustrated by the list of citations compiled by the Court of Appeals in its opinion in this case. See 4 Kan. App. 2d at 553-554. Application of comparative fault principles to strict liability actions in Kansas was forecast in *Stueve v. American Honda Motors Co., Inc.,* 457 F. Supp. 740 (D. Kan. 1978).

An examination of the comparative negligence statute, K.S.A. 60-258a, will indicate the statute refers repeatedly to negligence actions "where the comparative negligence of the parties in any action is an issue." In *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, 845, 610 P.2d 1107 (1980), we pointed out the comparative negligence statute applies in those situations where a defendant could have traditionally set up a defense of contributory negligence or an "analogous defense."

In both strict liability and implied warranty claims the defense of "assumption of risk" is recognized. *Brooks v. Dietz,* 218 Kan. 698, and *Bereman v. Burdolski,* 204 Kan. 162, 460 P.2d 567 (1969). In such a context assumption of risk is a contributory negligence concept. Traditionally it is a form of negligence which meets a threshold at which a party's conduct is considered so culpable as to bar that party from all recovery. Other forms of misconduct have barred recovery under our prior system. Included was "product misuse" or "unreasonable use." *Prentice v.*

*Acme Machine & Supply Co.,* 226 Kan. 406, 601 P.2d 1093 (1979). These defenses in products liability cases depended on the plaintiff's conduct. Reasonableness of conduct is a negligence concept.

The city, as appellant, questions whether the action accrued after the comparative negligence statute became effective. The city would have the court find the present cause of action was for a breach of warranty and it accrued at the time the product, CR-125, was sold to the city which was in April of 1974. See K.S.A. 84-2-725(2). It then argues that the comparative negligence statute, K.S.A. 60-258a, was not in effect in April, 1974. It applies only to actions accruing after July 1, 1974. We disagree with this reasoning. This is not a contract warranty case. The action was and is essentially a tort action which accrued when the act giving rise to the cause of action first caused substantial injury. K.S.A. 60-513(*b*). This was no earlier than July 17, 1975, when the sewage lagoons were sprayed by Mr. Aubley. The comparative negligence statute had become effective a year before.

There are practical considerations which seem to dictate the application of comparative liability principles to products liability cases. In the third-party petitions on file in this case three theories are alleged as a basis for recovery: (1) common law negligence, (2) strict liability, and (3) implied warranty. These are the usual theories asserted in products liability actions. When common law negligence is pleaded, the provisions of K.S.A. 60-258a must be applied to that theory of recovery, and in such case, whenever a negligent defendant is joined with a defendant charged with strict liability, it would seem to be impossible to escape a comparison of negligence as required by the comparative negligence statute. This is true because this would be necessary in order for the trial court to preserve the right of the defendant, against whom only a negligence claim is asserted, to have his exposure to liability reduced proportionately.

The defenses of assumption of risk and product misuse in strict liability actions were recognized by the courts because of a desire to soften the harsh barring effect of traditional rules of contributory negligence upon a plaintiff. The term assumption of risk as used herein refers to the action of a party in exposing himself or herself to a danger after that danger is both known and appreciated. The degree of misconduct necessary to bar a plaintiff's

claim was enlarged in such cases by requiring a greater culpability if the claim were to be barred.

Comparative negligence concepts also came as a result of a desire to soften the "all or nothing" rule of common law contributory negligence. See *Stueve v. American Honda Motors Co., Inc.,* 457 F. Supp. at 751; and Davis, *Comparative Negligence—A Look At The New Kansas Statute,* 23 Kan. L. Rev. 113, 114 (1974).

In this context, strict liability and comparative negligence are akin in that an injured plaintiff need not negate completely his own wrongdoing to recover something in the action. Comparative liability provides a system for allocating responsibility for an injury while still serving the social policy of not allowing a manufacturer or seller to escape liability for defective products merely because of slight culpability on the part of the product user in bringing about the injury. Application of comparative negligence principles to strict liability has found support in Kansas, not only in the Court of Appeals and the United States District Court, but also in the opinions of various legal writers who discussed the advent of comparative negligence in this state. Woods, *The New Kansas Comparative Negligence Act—An Idea Whose Time Has Come,* 14 Washburn L.J. 1, 25 (1975); Schwartz, *Comparative Negligence in Kansas—Legal Issues and Probable Answers,* 13 Washburn L.J. 397, 412 (1974); Kelly, *Comparative Negligence—Kansas,* 43 J.B.A.K. 151, 199 (1974); and Westerbeke and Meltzer, *Comparative Fault and Strict Products Liability in Kansas: Reflections on the Distinction Between Initial Liability and Ultimate Loss Allocation,* 28 Kan. L. Rev. 25 (1979).

This court has decided if the rules of comparative liability are applied to cases involving the special duties imposed by law upon product manufacturers, distributors and sellers, there can be an equitable resolution, on the one hand, of the social policy which commands that a manufacturer be deterred from producing defective and dangerous products, and, on the other hand, of the equitable policy enunciated in *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978), of assessing proportionate liability based upon comparative degrees of causation.

Much of what has been said in connection with the strict liability theory holds true for a products liability claim based upon implied warranty. The two theories are closely allied. In *Brooks v. Dietz,* 218 Kan. at 701, it is pointed out liability for

damages resulting from putting a dangerously defective product in commercial channels, although predicated on an implied warranty of fitness and sometimes considered a concept peculiar to the law of contracts, is not the result of an express contract when applied in products liability cases. It is imposed in such cases because of public policy the same as in cases based on other theories of tort liability. Defenses to such claims are usually analogous to contributory negligence and there is a high probability of joining such a claim with one for common law negligence. In the final analysis it must be admitted a products liability action based on implied warranty is more akin to an action in tort than one in contract. The general standards of conduct required are implied irrespective of any particular agreement between the parties, just as in any tort case. The same arguments leading to the conclusion that comparative liability principles should be applied to strict liability actions retain their force and effect when applied to an action based on implied warranty. Although strict liability has served as the battleground in acceptance or rejection of comparative liability in products liability cases, there has been recognition that "comparative implied warranty" is a viable concept as well. *Signal Oil & Gas v. Universal Oil Products,* 572 S.W.2d 320 (Tex. 1978). In *Signal* the court observed the requirement of "proximate" causation of injury calls into question the reasonableness of a plaintiff's use of the product. This may lead to the evaluation of a comparative percentage of causal fault between a warranty plaintiff and a defendant.

In Westerbeke and Meltzer, *supra,* 28 Kan. L. Rev. at 97, 98, it is stated:

"[T]he conceptual nature of implied warranty does not provide any sound reason for failing to apply comparative fault principles to those implied warranty actions that overlap strict liability actions."

In the lead comparative negligence case of *Brown v. Keill,* 224 Kan. 195, it was held the concept of joint and several liability between joint tortfeasors which previously existed in this state no longer applies in comparative negligence actions. The individual liability of each defendant for payment of damages is to be based on proportionate fault, and contribution among joint judgment debtors is no longer needed in such cases because separate individual judgments are to be entered. *Brown v. Keill* was a case

in which the plaintiff relied only on principles of negligence for recovery. The comparative negligence statute clearly applied.

In *Wilson v. Probst,* 224 Kan. 459, 581 P.2d 380 (1978), which followed, it was claimed a highway defect contributed to the occurrence from which the injuries and damages arose. It was held the comparative causation or fault of the Department of Transportation for failure to repair arising from a statutory liability was of a nature as to come within the purview of the comparative negligence statute even though the basis for such liability is not generally considered as falling into the category of negligence. A similar holding as to a claimed township highway defect was handed down in *Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539, 582 P.2d 271 (1978).

In *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, where it was claimed the defendant was negligent in violating K.S.A. 21-4209, prohibiting sales of explosives to persons under 18 years of age and certain others, and that such negligence caused plaintiff's injury, it was held the comparative negligence statute, K.S.A. 60-258a, applied. In such case breach of duty, or negligence per se, results from a finding that the criminal statute was violated. The negligence of the child is to be compared with that of the violator of the criminal statute. In *Wilson, Thomas* and *Arredondo,* we have considered and applied the comparative negligence statute to occurrences which previously were considered beyond the ordinary tort negligence situation.

After considering the foregoing matters we agree with the Court of Appeals that the doctrine of comparative fault or comparative causation should be and is applicable to both strict liability claims and to those claims based on implied warranty in products liability cases.

However, the application of comparative negligence principles to strict liability and implied warranty is a collateral issue in this case, for the plaintiffs-Kennedys did not put forth a claim against Continental or Huge. They sued the city and Mr. Aubley. A decision as to the applicability of comparative negligence principles becomes necessary, however, in considering the active/passive features of the city's claim for indemnity against Continental.

We further agree with the Court of Appeals that the statutory adoption of comparative negligence in Kansas has had the effect

of abrogating the concept of indemnification based on the dichotomy of active/passive negligence as conceptualized in *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, Syl. ¶ 3. In actions where comparative negligence is in issue the court deals in percentages of causal responsibility, and distinctions between primary, secondary, active and passive negligence lose their previous identities. The nature of misconduct in such cases is to be expressed on the basis of degrees of comparative fault or causation, and the all or nothing concepts are swept aside.

In our present case the city settled the entire liability for Kennedys' damages. Contrary to the holding of the Court of Appeals the settlement and release given covers all parties who may have contributed in any way to the damages. The plain and unambiguous wording of the release given by the plaintiffs did:

"[R]elease and forever discharge the said *defendants and all other persons, firms, and corporations, both known and unknown, of and from any and all claims, demands, damages, actions, causes of action, or suits at law or in equity,* of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by anyone prior to and including the date hereof on account of all injuries both to person or property resulting, or to result, *from an accident which occurred on or about the 17th day of July, 1975,* near Sawyer, Kansas." Emphasis supplied.

When one considers not only the plain wording of this release and the fact the pending action brought by the Kennedys was dismissed with prejudice there can be little doubt that all third-party defendants were relieved of possible future liability to the Kennedys, along with the city and Mr. Aubley. The holding of the Court of Appeals in *Geier v. Wikel,* 4 Kan. App. 2d 188, 603 P.2d 1028 (1979), upon which the Court of Appeals relied, was based upon a very different type of release. Geier was riding in the Wikel car which struck a freight train. Geier received a settlement from the railway company and executed a release which provided:

" 'The release . . . further recited that the accident occurred under circumstances which [Randy Geier and Norman Geier] claim render said Company liable in damages, although such liability is denied by said Company, and [Randy Geier and Norman Geier are] desirous to compromise, adjust and settle the entire matter.' " 4 Kan. App. 2d 188.

It was held the release did not inure to the benefit of Wikel since under the plain wording of the release it did not appear there was an intention to release more than the proportionate liability of the

railway company. In such case the release did not relate to other possible tortfeasors either by name or by general description, and the intent shown by the wording in the release was to limit the discharge of liability to the railroad.

We conclude that the Court of Appeals misconstrued the effect of the release given by the Kennedys in the present case. The court's reliance upon the *Geier* case was misplaced because of the clear difference in the wording of the two release forms and because of the decision we have reached today in the field of indemnity.

In *Brown v. Keill,* 224 Kan. 195, Syl. ¶¶ 5, 6, we held the concept of joint and several liability between joint tortfeasors previously existing in this state no longer applies in comparative negligence actions. The individual liability of each defendant for payment of damages will be based on proportionate fault, and contribution among joint judgment debtors is no longer necessary in such cases. We further hold in *Brown* that the intent and purpose of the legislature in adopting the comparative negligence statute was to impose individual liability for damages based on proportionate fault of all parties to the occurrence which gave rise to the injuries and damages.

It appears somewhat ironical in light of the foregoing expressed intent if, under our indemnity law as it exists, one liable for a proportionate share of liability for an occurrence cannot afford to settle the claim presented in a pending court action before trial and then in turn seek a determination of the reasonableness of the amount of his settlement in light of the damages and a further determination of comparative causal responsibility of other tortfeasors for the amount so determined. Courts have always taken the position that compromise and settlement of disputes between parties should be favored in the law in the absence of fraud or bad faith. *Massey-Harris Co. v. Horn,* 132 Kan. 206, 294 Pac. 666 (1931); *Fieser v. Stinnett,* 212 Kan. 26, 509 P.2d 1156 (1973).

Traditional implied indemnity, such as that sought by the city in this case, implies a shifting of 100% of a loss from the indemnitee to the indemnitor. In this respect it is distinguishable from "contribution," which contemplates a shift of only part of the loss to another. *Cullen v. Atchison, T. & S. F. Rly. Co.,* 211 Kan. 368, 375, 507 P.2d 353 (1973); Prosser, Handbook of the Law of Torts § 51 (4th ed. 1971) at 310. There are two traditional

situations in which claims of indemnity have been allowed in Kansas. The first (and more usual, since indemnity is a creature of contract) occurs when there is an express contract of indemnity, such as a "hold harmless" agreement. *Bartlett v. Davis Corporation,* 219 Kan. 148, 547 P.2d 800 (1976); *Bartlett v. Heersche,* 204 Kan. 392, 462 P.2d 763 (1969). It is the second type of indemnity, *implied* indemnity, which is at issue in this case. A contract of indemnity may be implied when one is compelled to pay what another party ought to pay. 42 C.J.S., Indemnity § 20; see *Chicago City v. Robbins,* 67 U.S. 418, 425, 17 L.Ed. 298 (1863). This may arise in a case of implied or constructive liability when one personally without fault is made to pay for the tortious acts of another; liability of a principal in *respondeat superior* for the acts of an agent or employee provides a good example. See *Wilshire Oil Company of Texas v. Riffe,* 409 F.2d 1277 (10th Cir. 1969); *Prickett v. Hawkeye-Security Insurance Company,* 282 F.2d 294 (10th Cir. 1960); *Fenly v. Revell,* 170 Kan. 705, 228 P.2d 905 (1951). However, the present case concerns a variant of the implied indemnity contract as recognized in Kansas when the fault of one defendant may be characterized as "active" and that of the other as "passive." See *Denneler v. Aubel Ditching Service, Inc.,* 203 Kan. 117, 453 P.2d 88 (1969); *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251.

The development and acceptance of implied indemnity based upon characterizations of "active" and "passive" negligence is evidence of this court's desire to see that the most culpable party, as between two wrongdoers, bears the ultimate loss. Implied indemnity gave some defendants the means, albeit limited, to avoid the common law ban on contribution among tortfeasors, and has represented an attempt to allocate damages on the more equitable basis of "superior fault." It is clear that this active/passive doctrine forms the basis of the claim for indemnity put forth by the city in this case. The city's third-party claim emphasizes the allegedly "passive and secondary" character of any fault which may be attributable to the city. It recognizes that "primary/secondary" or "active/passive" standards apply to indemnity claims based on negligence, warranty, and strict liability alike. See *Lenhart v. Owens,* 211 Kan. 534, 507 P.2d 318 (1973), where warranty indemnity was based on primary/secondary causation. There it is held, liability based on concurrent fault of indemnitee and indemnitor will not justify recovery.

The problems with traditional implied indemnity are many. Courts have had difficulty in characterizing specific conduct as active or passive, primary or secondary, since this language is so imprecise and capable of various interpretations. See *Stanfield v. Medalist Industries, Inc.,* 17 Ill. App. 3d 996, 999-1000, 309 N.E.2d 104 (1974); *Pachowitz v. Milwaukee & S. Transport Corp.,* 56 Wis. 2d 383, 389, 202 N.W.2d 268 (1972). Also, the theory necessarily distributes loss on an all or nothing basis. The traditional defense of the "no contribution" rule has been that it denies wrongdoers the benefits of the law. However, it must be recognized that a "passive" or "secondary" indemnitee received that benefit regardless of the extent of his wrong. *Bielski v. Schulze,* 16 Wis. 2d 1, 17-18, 114 N.W.2d 105, (1962); Restatement (Second) of Torts 886B, Comment (l). Settlements, which are ordinarily made with reference to the relative fault of codefendants, have been complicated by the possibility of all or nothing loss distribution, the consequent exoneration of the indemnitee, and the shouldering of the entire burden by the indemnitor. The traditional implied indemnity, regardless of its beneficent purpose, has been at best a "blunt instrument" for reallocating loss. *Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362, 367 (Minn. 1977).

The advent of comparative negligence has made it possible in most cases to avoid the inadequacies of implied indemnity, since a mechanism now exists to assess the relative fault of various wrongdoers on a much more precise basis. Thus, a number of jurisdictions have seized upon the opportunity to abolish traditional implied indemnity in favor of a theory of "comparative causal responsibility." Such a rule avoids the all or nothing aspect of implied indemnity law, and distributes loss in relation to fault, serving at once the remedial goals of strict liability, the equitable loss allocation goals of comparative liability, and the general deterrence goals of tort law.

A large and well-reasoned body of law in comparative negligence jurisdictions has determined that the concept of active/passive negligence has been extinguished by the introduction of comparative negligence. Wisconsin, an "early" comparative negligence state, judicially adopted a rule of comparative contribution in *Bielski v. Schulze,* 16 Wis. 2d 1. Since

Wisconsin had historically allowed contribution among joint tortfeasors on a "share and share alike" basis, no implied indemnity doctrine was needed in that state. However, *Bielski* marks a relatively early recognition of the fact that in a comparative negligence case the only fair means of allocating responsibility as between joint tortfeasors is allocation on a percentage basis. The *Bielski* case laid the groundwork for the adoption of "comparative contribution" both in states recognizing a right to contribution by shares and jurisdictions in which the existence of a right to contribution was unclear. See *Packard v. Whitten,* 274 A.2d 169 (Me. 1971); and *Gomes v. Brodhurst,* 394 F.2d 465 (3rd Cir. 1967).

One of the first states to expressly abrogate the active/passive indemnity theory was New York in the case of *Dole v. Dow Chem. Co.,* 30 N.Y.2d 143, 282 N.E.2d 288 (1972). *Dole* is particularly instructive in the context of the present case since it involved toxic chemicals and a claim of a manufacturer's failure to warn of the dangers inherent in use of the chemicals. The indemnity claim, however, was asserted "downstream" rather than "upstream," in that the manufacturer asserted a right to indemnity from the user for the latter's assertedly "primary" negligence. The New York court observed the many shortcomings of implied indemnity theory, and concluded that the liability of defendants *inter sese* should be determined on a percentage-of-fault basis.

*Dole* was followed by *Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400 (7th Cir. 1974), which adopted "comparative contribution" or "comparative indemnity" based on percentage of fault as a doctrine of federal common law. Later the Supreme Court in *United States v. Reliable Transfer Co.,* 421 U.S. 397, 44 L.Ed.2d 251, 95 S.Ct. 1708 (1975), was presented with an admiralty claim in the comparative negligence context. Historically, admiralty law had sanctioned a "divided damages rule" which provided for allocation of half the damages to each party when both were at fault. An exception had developed, known as the "major-minor rule," when the fault of the parties was grossly unequal. In operation, this exception provided for complete payment by the party "grossly" at fault; its operation was analogous to the implied indemnity principle of active/passive negligence previously adopted in Kansas. The Supreme Court in *Reliable Transfer* held that the rule merely replaced one unfairness with another, and

concluded that the responsibility for damages as between two wrongdoers should be determined by their relative percentages of fault.

The Supreme Court's reasoning on this matter of federal common law may be particularly important in Kansas, where it appears the acceptance of the active/passive indemnity principle is of relatively recent origin. In *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, this court traced the history of implied indemnity in Kansas. Two previous Kansas cases were cited as instructive upon the principle, but the principal authority invoked was that of *Security Insurance Co. of New Haven v. Johnson,* 276 F.2d 182 (10th Cir. 1960), which is quoted at some length at pages 256, 257 and 258 of the *Russell* opinion.

Since the development of more recent products liability theories, the reasoning of the cases cited above has been extended by implication to indemnity claims between products liability defendants. In *Skinner v. Reed-Prentice Div. Pack. Mach. Co.,* 70 Ill. 2d 1, 374 N.E.2d 437 (1977), the Illinois Supreme Court faced a claim for indemnity between two products liability defendants. Illinois traditionally had no right to contribution but recognized active/passive indemnity as did Kansas. The Illinois court observed that this form of indemnity had developed to mitigate the harsh effects of the no contribution rule, and recognized that the application of implied indemnity principles to the ever increasing situations where there is some fault attributable to both parties produces harsh effects without uniformity of result.

Perhaps one of the best recent examples of the proper handling of implied indemnity claims in a comparative negligence jurisdiction is provided by *Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362. *Tolbert* contains an enlightening discussion of the principles addressed above. Plaintiff Tolbert brought a products liability action against both the manufacturer of a product (Gerber) and the installer of the product (Voldco). The jury attributed 100 percent of the negligence to Gerber and Voldco jointly, and it did not apportion percentages between them. Pursuant to established Minnesota law, the installer-distributor Voldco was awarded 100 percent indemnity from the manufacturer, Gerber. The Minnesota Supreme Court, however, recognized that a change in indemnity principles had been worked by the adoption of comparative negligence:

"The issue presented is one which prompts us to re-evaluate well-established common-law rules in light of recently adopted principles of comparative negligence. Specifically, the question is whether a negligent installer of defective equipment is entitled to 100-percent indemnity from the negligent manufacturer because the negligence of the former was 'passive' or 'secondary,' or whether the joint tortfeasors should be responsible for the loss in accordance with their respective degrees of culpability." 255 N.W.2d at 364.

The court pointed out that dealer-manufacturer claims for indemnification are merely variants of the active/passive indemnity principle where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged. Expressing its disapproval of any theory which would shift the entire loss from one culpable wrongdoer to another, the court stated:

"In the related area of contributory negligence, our legislature has abandoned the all-or-nothing approach of the common law by adopting a comparative negligence statute, Minn. St. 604.01. Tortfeasors must now accept responsibility for damages commensurate with their own relative culpability. . . .

"By limiting the reallocation of loss between joint tortfeasors to contribution based upon relative fault, the more culpable tortfeasor will continue to bear a greater share of the loss, but at the same time his joint tortfeasor will not continue to escape all liability as in the past. . . ." 255 N.W.2d at 367.

It is interesting to note in that case the liability found by the jury and upheld on appeal was based upon theories of implied warranty of fitness and strict liability, as well as negligence. The Minnesota court recognized, then, that any indemnity claim having as its basis a disproportion of culpable conduct becomes inequitable and unfair when a comparative liability mechanism exists for precise determination of degrees of causal responsibility. There is no reason in a comparative liability jurisdiction to hold a defendant, the proposed indemnitor, liable for damages in disproportion to his causal fault. Similarly, there is no reason to deny another defendant, the proposed indemnitee, a right of liability reduction when his fault, although minimal in terms of causal involvement, may nevertheless be characterized as "active."

It may be seen, then, that disapproval of indemnity awards based upon the supposed "active" or "primary" conduct of the indemnitee has gathered the support of a number of courts and commentators. Comparative liability, with its superior mechanism for allocating responsibility, renders the all or nothing

theory of implied indemnity an anachronism. Yet the relatively unique comparative liability system existing in Kansas provides an even stronger impetus for the abolition of all or nothing implied indemnity.

Of course, to satisfy the legislative intent of encouraging resolution of all issues in a single action, the comparison of fault of all wrongdoers should be effected in the original action. *Eurich v. Alkire,* 224 Kan. 236, 579 P.2d 1207 (1978). It must be recognized that the procedural mechanism of K.S.A. 60-258a(*c*) exists to facilitate joinder (and hence comparison) of all potential wrongdoers and may supersede the third-party mechanism which formerly provided the only means for securing a consideration of the fault of a wrongdoer who plaintiff chose not to sue. The maintenance of a claim by plaintiff against a joined party is not a prerequisite to securing comparison. *Brown v. Keill,* 224 Kan. 195, Syl. ¶ 6. It would appear, however, that the formal "joinder" mechanism of K.S.A. 60-258a(*c*) evidences a legislative intent to allow a defendant to force comparison of his fault with that of a third party. This court has not, however, viewed the invocation of formal joinder as a necessary prerequisite to effecting comparison of fault (*Brown v. Keill,* 224 Kan. at 205-207), and this court has recognized that the comparative negligence statute is silent as to what position the added party occupies once that party is joined.

We conclude that now is the proper time under the facts of this case to adopt a form of comparative implied indemnity between joint tortfeasors. When as here a settlement for plaintiffs' entire injuries or damages has been made by one tortfeasor during the pendency of a comparative negligence action and a release of all liability has been given by plaintiffs to all who may have contributed to said damages, apportionment of responsibility can then be pursued in the action among the tortfeasors.

Although the plaintiffs (Kennedys) may have been dismissed from the action their comparative causal responsibility need not be determined except to ascertain that their causal negligence was not in excess of 49%. If it is determined to be in excess of 49%, no right to recover in the action existed and any claim for indemnity should be denied because of failure to establish actual legal liability. In the present case where the amount of the damages were not fixed by judicial proceedings, but by compromise and settlement between plaintiff and defendants, it will be the duty of

the defendants to bring into the action all tortfeasors against whom comparative liability through indemnity is sought. Reasonable damages if less than the settlement figure should be judicially determined. If the reasonable amount of the damages is determined to be more than the settlement figure, all tortfeasors will receive the benefit of the bargain struck by the settling tortfeasor. The apportionment should be accomplished in the action which was pending between plaintiff and defendants when the compromise and settlement is accomplished. If a settlement has been made for all liability arising from the occurrence before a comparative negligence action has been filed, the settling tortfeasor may then and in that event file an action in court to have the degrees of responsibility among joint tortfeasors determined, damages assessed and apportionment decreed among them.

In such a case it would appear that the amount the defendant or defendants have paid in full settlement of plaintiffs' claim would be the maximum amount subject to be apportioned. In any action where apportionment of responsibility is sought by a settling tortfeasor he or she will be required to establish the reasonableness of the amount of the settlement, and that he or she had an actual legal liability he or she could not be expected to successfully resist.

"The fact of voluntary payment does not negative the right to indemnity, since a person confronted with an obligation that he cannot legally resist is not obligated to wait to be sued and to lose a reasonable opportunity for compromise. Such recovery is subject to proof of liability and the reasonableness of the amount of the settlement. Thus, the indemnitee may be required to establish his case against the indemnitor in the same way that the claimant against him would have been obligated to do, namely, by a preponderance of the evidence. A mere showing by a party seeking indemnity that there was a reasonable possibility that it might have been held liable if it had not settled the injured party's suit is not sufficient to recover indemnity; . . ." 41 Am. Jur. 2d, Indemnity § 33, p. 723.

Settlements between injured parties and tortfeasors are favored in the law, and the policy of settlement should be encouraged by providing that a release by an injured party of one tortfeasor does not release other tortfeasors from claims of indemnity. If the release agreement expressly releases all tortfeasors, the settling tortfeasor should be able to seek apportionment from his co-tortfeasors based on comparative degrees of responsibility.

This court concludes that in comparative negligence cases

when full settlement of all liability to an injured party has been accomplished and a release obtained, proportionate causal responsibility among the tortfeasors should be determined and indemnity should be decreed based on degree of causation of the respective tortfeasors.

In returning this case to the trial court we do not wish our opinion to be misinterpreted. We make no determination as to the sufficiency of the evidence. We merely note there was indication in the record that a representative of Continental viewed the area surrounding the sewage lagoons and recommended the use of CR-125. We further note there was some claim made that the label on the CR-125 container was affixed by Huge and that it failed to adequately warn. There was some indication that Mr. Aubley, acting for the city, may have been negligent when he mixed the spray and applied it with a cattle sprayer. We suggest that these matters, if they can be established, are for the trier of fact. Even though negligence appears certain as to existence the comparative degree remains in considerable question.

Accordingly, the order dismissing the third-party defendants from this case is reversed and the case is remanded to the trial court for further proceedings in accordance with the views expressed herein.

McFARLAND, J., concurring in part and dissenting in part. The majority opinion herein seeks to resolve a number of difficult questions which are likely to arise relative to comparative negligence. A major difficulty with the opinion is that many of the questions determined were not, are not, and can never be issues in this case. Certainly appellate courts should, where appropriate, interpret new statutes and procedures in order that the instant case may be properly resolved and provide guidance for courts and litigants in other cases involving similar issues.

This court has consistently held that its function is not to issue advisory opinions. Likewise, the court has repeatedly stated that it will not decide moot questions, although some flexibility in this rule is noted where issues of great statewide interest have been involved. The major question decided by the majority opinion cannot be categorized as moot, as inherent in that term is the fact such issues were viable at one time, but due to some subsequent occurrence they are no longer viable. In the case before us these

issues were never in the case and hence could never be classified as moot issues.

Likewise, the term "advisory opinion" is inapplicable because neither the trial court nor any party requested determination of these issues. Advisory opinions involve a seeking of advice on an issue not presented in an actual controversy. Clearly, this is not the situation herein.

What we have is a situation wherein the parties had a lawsuit whose nature, format, and issues were clearly understood by the trial court and all parties. The trial court rendered an opinion within the framework of the lawsuit and the defendants thereto appealed from the decision. Instead of determining whether or not the trial court erred in the particulars claimed by the appellants, the Court of Appeals used the case as a vehicle to decide all manner of comparative negligence questions which judges and attorneys have recognized must eventually be determined in cases where the same were issues on appeal. Instead of labeling the Court of Appeals' injection of such issues into the appeal as error and deciding the appeal on its merits, the majority has compounded the error by preparing an exhaustive treatise dealing with whether or not the Court of Appeals correctly decided the manufactured issues. The fact the issues so decided are of great statewide significance is no excuse to sacrifice the appeal before us in the name of the common good.

The following accurately reflects the facts herein. Plaintiffs' cattle died. Plaintiffs sued defendants for damages for the loss of the cattle in tort on the theory that the cause of death was the negligent application of a herbicide on adjoining property by defendant City and its defendant employee. In their answer, defendants denied negligence and alleged contributory negligence on the part of plaintiffs. Then defendants filed a third-party petition pursuant to K.S.A. 60-214 against Continental Research Corporation, alleging negligence, breach of implied warranty, misrepresentations, and strict liability for the product and seeking *indemnity* for any judgment rendered against the defendants-third-party plaintiffs in favor of the plaintiffs. The whole thrust of the third-party petition was that the herbicide and the dealings and relationship between third-party plaintiffs and third-party defendants had placed third-party plaintiffs in a position wherein they were exposed to damage, *i.e.*, a possible judgment against them, and seeking indemnity for any such judgment

which might ultimately be entered against them. Third-party defendant Continental then filed a third-party petition against one of its suppliers, Huge Company, on a similar indemnity theory. *No cross-actions of any kind were pled* or even suggested. It was a contingent chain of claims. Huge was faced with possible liability only to Continental, and then only if a judgment had been rendered against Continental on defendant City's third-party action. Continental's sole exposure was to the City and then only if the City were held liable to the plaintiffs.

At no place in the pleadings does any party seek to bring either Huge or Continental into the action between plaintiffs and defendants for any purpose.

The majority opinion concludes that who sues who for what is a mere technicality under notice pleading and speculates amendments might later have been made to draw all parties' negligence to the plaintiffs into the case.

K.S.A. 60-208, the notice pleading statute, provides in relative part:

"(a) *Claims for relief.* A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which the pleader deems himself or herself entitled. Every pleading demanding relief for damages in money in excess of ten thousand dollars ($10,000) shall, without demanding any specific amount of money, set forth only that the amount sought as damages is in excess of ten thousand dollars ($10,000), except in actions sounding in contract. Every pleading demanding relief for damages in money in an amount of ten thousand dollars ($10,000) or less shall specify the amount of such damages sought to be recovered. Relief in the alternative or of several different types may be demanded.

"(b) *Defenses, form of denials.* A party shall state in short and plain terms his or her defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If the party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, the pleader may make denials as specific denials of designated averments or paragraphs, or the pleader may generally deny all the averments except such designated averments or paragraphs as the pleader expressly admits; but, when the pleader does so intend to controvert all averments, the pleader may do so by general denial, subject to the obligations set forth in K.S.A. 60-211."

At the very minimum, clearly, notice pleading requires that a

claim must be asserted against a particular party. The party must be given notice of who is suing him and for what. The majority opinion implies that notice pleading requires only that one be notified that he is a party to the lawsuit and that once a party he is in the lawsuit for all purposes and may be recovered against or may recover against anyone else who is then or who later becomes a party. If this be the case perhaps the words plaintiff, defendant, third-party defendant, third-party plaintiff, counterclaim, cross-claim, etc., should be eliminated and we should have only "parties," with juries instructed to allow such damages in favor of or against such parties as the jury deems appropriate. Surely who sues who for what is more than a technicality.

The speculation in the majority opinion as to possible amendments is an even weaker willow to cling to. There is nothing in the record to indicate any party had any intention of amending, nor do appellants contend they were denied any amendment. The fact is, the parties were content with the lineup of the parties and it must be accepted that the parties are so situated. It is just as much a part of the facts as is the fact the cattle died.

We then go to what the trial court did that appellants consider to be error. Third-party defendants Huge and Continental filed motions to dismiss the third-party petitions against them on the grounds that spraying by defendant City through its employee, defendant Aubley, was active negligence and hence no indemnification was legally possible. The trial court sustained the motions to dismiss, concluding the act of spraying was either active negligence as a matter of law or no negligence at all; therefore no indemnification could be possible. Defendant City and Aubley appealed therefrom, aggrieved by the dismissal of their potential indemnitor, Continental, and by the finding that the spraying was active negligence as a matter of law for the purposes of the motion. While the appeal was pending defendants settled with plaintiffs.

Did the trial court err in determining the issues before it as claimed by appellants, and what effect does the settlement have on the issues properly on appeal?

I concur that joint and several liability among joint tortfeasors was abolished by the introduction of comparative negligence. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978). Kansas has adhered to the doctrine that there can be no contribution between

joint tortfeasors, but there may be indemnity where they are not *in pari delicto* and their negligence is substantially different, not merely in degree but in character. See *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, 428 P.2d 783 (1967), for a full discussion of this principle and its purpose. I believe that need for indemnity between joint tortfeasors as set forth in *Russell* has been abolished by comparative negligence. However, we are only talking about joint tortfeasors whose combined torts caused plaintiffs' damage. I would limit this to those situations where the alleged negligence could have been asserted by the plaintiff directly against the third-party defendant. If such be the case, the defendant could bring the joint tortfeasors in under K.S.A. 60-258a for a determination of relative fault. Any portion of the third-party plaintiffs' petition for indemnity against Continental falling within the above category was properly dismissed. However, here the third-party plaintiffs contend: (1) Third-party defendant Continental and third-party plaintiff City had a contractual relationship; (2) as a part of that contractual relationship the third-party defendant, upon express misrepresentation, sold an unfit and dangerous product to the third-party plaintiff; (3) as a result of said sale the purchaser (third-party plaintiff) was damaged by being exposed to liability for harm done by the product (now a settlement paid); and (4) they are entitled to indemnification. Comparative negligence in no way bars or affects such a third-party indemnification action.

The fact defendants settled with plaintiffs while the case was on appeal affects the issues before us only to the extent that a dollar amount is now set for the alleged damage for which indemnification is sought. I would reverse the trial court as to its dismissal of the third-party petitions except for allegations of joint negligence which could have been the basis of litigation in the action between plaintiffs and defendants.

Indemnification on the contractual theory is alive and well. On remand the issue should be: (1) Whether the settlement was reasonable; (2) if the settlement is not held to be reasonable, the court may determine what a reasonable figure would have been and that figure then would become the indemnity base; (3) determination whether or not the City should be indemnified for its loss *in toto* by Continental, comparison of respective fault being no part of the contractual indemnification action; and (4) if

indemnification is granted in favor of the City, the court should then determine whether Continental is entitled to indemnification from Huge.

I concur with those portions of the majority opinion which are consistent with the rationale herein expressed, and dissent from those parts that are inconsistent with this opinion or which deal with issues I believe were improperly considered.