No. 53,327

SYLVESTER GAULDEN, *Plaintiff-Appellee,* v. BURLINGTON NORTH-ERN, INC., Successor to St. Louis-San Francisco Railway Company, *Defendant-Appellant,* and JACK A. JAMES, *Defendant-Appellee.*

(654 P.2d 383)

206

Opinion filed December 3, 1982.

*Glenn D. Young, Jr.,* of Gott, Young & Bogle, P.A. of Wichita, argued the cause and was on the brief for defendant-appellant.

*Daniel J. Sevart,* of Render & Kamas, of Wichita, argued the cause, and *Roger M. Theis,* of the same firm, was with him on the brief for plaintiff-appellee.

*Kenneth H. Hiebsch,* of Hiebsch, Robbins & Tinker, of Wichita, argued the cause, and *Connie J. Nordboe,* of the same firm, was with him on the brief for defendant-appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendant, Burlington Northern, Inc. (the railroad), successor to the St. Louis-San Francisco Railway Company (Frisco), from a judgment for $750,000 entered against it and in favor of the plaintiff, Sylvester Gaulden, following a jury trial in Sedgwick District Court. Gaulden, a former Frisco employee, brought the action to recover damages for personal injuries against the railroad under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 *et seq.* (FELA), and against defendant Jack James, the driver of a pickup truck involved in a crossing accident, alleging that the joint negligence of the defendants caused him injury. The primary issue on appeal is whether the trial court erred in failing to submit the issue of James' negligence to the jury.

Gaulden was employed as a brakeman on November 22, 1979. The accident occurred while the train was pushing eleven freight cars over the State Street crossing in Augusta, Kansas, in a switching operation. Plaintiff was riding on the north side of the front end of the lead tank car as it approached the crossing. The train was moving at a speed of approximately three to four miles per hour. It passed over a switch some 575 feet west of the crossing, which activated eight flashing lights on each side of the crossing, and a warning bell. Gaulden, carrying a signal lantern and a walkie-talkie radio pack, was preparing to flag the crossing as is required by transportation department rules, and as was his duty. Plaintiff saw the James pickup truck approaching the crossing from the north, and he started to step off of the train in order to flag the crossing. The truck slowed down and paused or stopped; Gaulden stepped back on the tank car, and as he did so,

he heard the truck accelerate. James apparently decided to try to beat the train and started through the crossing. Gaulden called out a warning to the engineer over his radio, and immediately jumped clear in order to avoid being struck by the truck. The tank car collided with the right rear quarter of the pickup. When Gaulden jumped to the pavement, he injured his right knee; it has become progressively worse. He has been hospitalized six times, and has been unable to work.

Plaintiff filed this action on March 27, 1980, against both the railroad and against James. James answered, denied negligence, and alleged that the railroad's negligence was the sole cause of the collision. The railroad denied negligence, claimed that the plaintiff was contributorily negligent, and that James' negligence was the direct cause of the collision. The railroad also asserted a cross-claim against James, claiming over against him and contending that he was liable to the railroad for any sum which the employee might be awarded against the railroad in this action.

On October 27, 1980, plaintiff settled his claims against James for $50,000, and executed a Release and Indemnification Agreement. The terms of that document are somewhat unusual, and are tailored to the concept of comparative negligence. In order to place the discussion that follows in proper perspective, we set out the principal portions of that document. It reads:

"Now, THEREFORE, I, the undersigned, Sylvester Gaulden, for myself, my heirs, administrators, executors, successors and assigns, for and in consideration of the payment of the total amount of Fifty Thousand Dollars ($50,000.00), by Farmers Insurance Company, Inc. on behalf of Jack A. James, to the undersigned, the receipt of which amount is hereby acknowledged, and other good and valuable consideration, do hereby release, remise and forever discharge the following named persons, corporations and firms, and their respective officers, agents, employees, successors, and insurers, and each of them, and only such persons, corporations and firms, to-wit: Jack A. James and Farmers Insurance Company, Inc., of and from any and all claims, demands, rights or causes of action of whatsoever kind or nature which the undersigned has ever had or may now have or may hereafter have, whether now known or unknown, foreseen or unforeseen, arising from or by reason of or in any way connected with, any injuries, losses, damages, disability, suffering, property damages or loss, or the results thereof, which heretofore has been or hereafter may be sustained by the undersigned as a result of or in connection with or arising out of that certain accident which occurred on or about the 22nd day of November, 1979, at the intersection of Sixth Street and the railway tracks in Augusta, Butler County, Kansas.

"It has been represented by the undersigned that the injuries sustained and the suffering and damages resulting therefrom by the undersigned have persisted and

that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that the undersigned relies on the undersigned's own beliefs and knowledge, and that of the physician and attorneys of the undersigned, as to the nature, extent and duration of the symptoms and injuries.

"The settlement and release made and effected hereby is a compromise settlement of the undersigned with Jack A. James and Farmers Insurance Company, Inc. (hereinafter called 'the settling parties') and neither this release nor the payments made pursuant thereto shall be construed as an admission of liability of any of said settling parties, the same being denied. The total claims for damages of the undersigned amount to more than the amount of the aforesaid consideration of $50,000.00 paid and credited to the undersigned herewith by the settling parties being released hereunder, and the undersigned, knowing that the settling parties released hereunder and herein are not paying the total of the undersigned's full claim of damages as would be paid if all defendants and interpleaded defendants in said pending action, including Jack A. James, were settling said action and all claims for damages of the undersigned therein, does hereby credit and satisfy that portion of the total amount of damages of the undersigned which the undersigned has suffered and will suffer because of the aforesaid accident which has been caused by the negligence, if any, of such of the settling parties hereto as may hereafter be determined to be the case in the further trial or other disposition of this or any other action, it being the act and intention of the undersigned to release and discharge, and he does hereby release and discharge that fraction and portion and percentage of his total causes of action and claim for damages against all parties in said Case No. 80 C 741 pending in the District Court of Sedgwick County, Kansas, which shall hereafter, by the further trial or other disposition of this or any other action, be determined to be the sum of portions or fractions or percentages of causal negligence for which any or all of the settling parties hereto are found to be liable and responsible in causing said accident with respect to any finding of damages or recovery made by or for said Sylvester Gaulden; and the undersigned does hereby reserve, save, maintain and preserve against St. Louis-San Francisco Railway Company the balance of the whole cause of action of the undersigned against St. Louis-San Francisco Railway Company, which balance of said cause of action is not released hereunder. Except as above specified, the undersigned does not release St. Louis-San Francisco Railway Company, from any liability for damages and specifically reserves his rights, claims and causes of action, as aforesaid, against St. Louis-San Francisco Railway Company.

"In further consideration of the aforesaid payment to the undersigned, by the settling parties hereto, for the damages, injuries and claims of the undersigned, the undersigned, for himself, his heirs, administrators, executors, successors and assigns, does hereby indemnify and agree to indemnify and save harmless said Jack A. James, his respective officers, agents, employees, successors, assigns and insurers: (1) for any amount that they will or may be required to pay upon any judgment (exclusive of defense costs and court costs, if any) obtained against them by a joint tortfeasor including the St. Louis-San Francisco Railway Company or any other party to said action or any other party for contribution in any way arising out of any damages of the undersigned herein resulting from said accident of November 22, 1979, and all claims made by the undersigned with respect

thereto, and to satisfy any such judgment against the settling parties, and does hereby further agree, and authorize his attorneys to execute a stipulation thereto, to dismiss, on the merits and without costs to the undersigned or any of the settling parties, said action, Case No. 80 C 741, as against Jack A. James; and (2) for and from any lien claimed upon the proceeds of the settlement made herein by the Railroad Retirement Board, the United Transportation Union Insurance Association, or any other person.

"The undersigned, in order to assure his effective performance of his obligations by reason of the foregoing agreement to indemnify, further agrees as follows:

"(a)   That in the event he makes a negotiated settlement of his claims against the St. Louis-San Francisco Railway Company, there will be incorporated into such settlement an agreement by the St. Louis-San Francisco Railway Company releasing Jack A. James from any claims by reason of its payment made to the undersigned and a dismissal with prejudice of its Cross-Claim against Jack A. James in the aforesaid suit, Case No. 80 C 741.

"(b)   That in the event he recovers a judgment in Case No. 80 C 741 against the St. Louis-San Francisco Railway Company, he will cause to be filed in said action a partial satisfaction of said judgment to the extent that the said Railway has obtained a judgment against Jack A. James upon its Cross-Claim in return for said Railway filing a satisfaction of judgment upon its Cross-Claim against Jack A. James.

"(c)   That to the extent that he may collect funds from the St. Louis-San Francisco Railway Company, that he will cause said funds to be channeled through the offices of his attorneys, Render & Kamas and he does hereby authorize, direct and empower the said attorneys, Render & Kamas to withhold from the proceeds of any such funds received by settlement made herein and from the proceeds of any amount received by settlement or judgment from the St. Louis-San Francisco Railway Company, or paid in its behalf, such amounts as are necessary to carry out the obligations of the undersigned under the aforesaid indemnity and to pay over the said sums to the parties entitled thereto under the terms and provisions of said indemnity agreement.

"It is understood that the undersigned, Sylvester Gaulden, for himself, his heirs, executors, administrators, successors and assigns, agrees to satisfy on behalf of the settling parties any amount of any judgment to which he may be found to be entitled against Jack A. James over and above the extent of the fraction of his cause of action hereinbefore defined and released hereunder.

"The foregoing release and indemnification agreement has been read and understood by the undersigned before signing thereof.

"In Witness Whereof, the undersigned has hereunto set his hand and seal this 27th day of October, 1980."

Following the settlement, plaintiff moved to dismiss his action against James with prejudice; that motion was granted by the trial court, after hearing on November 4, 1980. On February 13, 1981, defendant James moved for summary judgment on the cross-claim of the railroad against him. This was argued on March 12,

1981, and the motion was sustained. The court simply ruled that there were no controverted material issues of fact, and that James was entitled to judgment as a matter of law. The railroad's motions requesting either (1) that the trial court make an express determination that there is no just reason for delay and expressly direct the entry of judgment for James under K.S.A. 60-254(*b*), or (2) that the court declare that the entry of the judgment for James involves a controlling question of law and that an immediate appeal may materially advance the litigation, pursuant to K.S.A. 60-2102(*b*), and (3) that the court grant a continuance of the trial date, were all argued and denied.

Trial commenced on the following Monday, March 16, 1981. Four days later the jury returned its verdict, finding that negligence of both the railroad and the plaintiff contributed to the accident and the resulting injuries, fixing plaintiff's percentage fault at 25%, and fixing the amount of plaintiff's damages at one million dollars. The trial court reduced that amount by 25%, as required by the FELA, and entered judgment against the railroad for $750,000. The jury was not required to determine the percentage of fault, if any, of the defendant James. The motion for new trial was argued and denied. This appeal followed.

This is an FELA case. 45 U.S.C.A. § 51 provides in substance that every common carrier by railroad while engaging in interstate commerce, "shall be liable in damages to any person suffering injury while . . . employed by such carrier in such commerce," if the injury resulted "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . ." 45 U.S.C.A. § 53 provides that an employee's contributory negligence shall not bar recovery, "but the damages shall be diminished . . . in proportion to the amount of negligence attributable to such employee." Thus, where contributory negligence of the employee is claimed, the FELA prescribes a form of comparative negligence whereby the proportionate share of the total causal negligence attributable to the employee must be determined, and the employee is denied recovery for that proportionate part of the damages ascribable to his fault.

FELA makes no provision for the reduction of damages recoverable by an employee against the carrier on account of the fault of any third person. Liability is thus imposed upon the carrier for

all damages sustained by its employee except any part attributable to the negligence of the employee, if the injury is wholly or partly caused by the railroad's negligence. The purpose of the act is to require the employer to pay damages to an injured employee if the employer in any way caused or contributed to the injury. The plaintiff's right to maintain the action and to recover against his employer is governed by federal statutory law. The rights of the employee and the obligations of the employer may not be diminished by state law, rule, regulation, or practice. See *Dutton v. Southern Pacific Transp.,* 576 S.W.2d 782, 784 (Tex. 1978).

FELA does not provide a vehicle for the determination of the fault of a third party, and the act likewise makes no provision for the carrier to recover over against a third party any damages caused by the third party's negligence for which the carrier is statutorily liable to the employee. A railroad's right to recover indemnity or contribution from a third party for liability incurred under FELA depends entirely on state law. See *Schrier v. Indiana Harbor Belt R. R. Co.,* 82 Ill. App. 3d 561, 402 N.E.2d 872 (1980); *Penn Central Corp. v. Checker Cab Co.,* 488 F. Supp. 1225 (D. Mich. 1980); *Amer. Employers' Ins. Co. v. Yellow Cab,* 49 Ill. App. 3d 275, 364 N.E.2d 948 (1977); *Brenham v. Southern Pacific Company,* 328 F. Supp. 119, 123 (W.D. La. 1971) *aff'd* 469 F.2d 1095, *cert. denied* 409 U.S. 1061 (1972); *Eades v. Union Railway Co.,* 396 F.2d 798 (6th Cir. 1968), *cert. denied* 393 U.S. 1020 (1969); Annot., 19 A.L.R.3d 928. FELA, while not providing for contribution, does not prevent the railroad from attempting to recover its losses from a third party. The purpose of FELA, to obligate an employer to pay damages when there is proof that the employer's negligence played any part in causing injury to an employee, is not defeated by permitting the employer to recoup its losses in part or in full from a third party, when the circumstances and state law permit. Similarly, the purpose of the act is not defeated by determining the percentage of causal negligence of a third party in an employee's action against a carrier, so long as that determination is not utilized to reduce the recovery of damages to which the employee is entitled under FELA.

Does a railroad, in a damage action brought against it under FELA and premised upon the railroad's negligence, have the right under Kansas law to indemnification or contribution from a third party whose negligence caused or contributed to the injury?

We turn to explore this issue in the light of our comparative negligence statute, K.S.A. 60-258a.

The purpose of that statute is to impose individual liability for damages based upon proportionate fault. The concept of joint and several liability between joint tortfeasors no longer applies, and since individual judgments will be based upon proportionate fault, contribution among joint judgment debtors is no longer required. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978). Similarly, the concept of primary and secondary or active and passive negligence is no longer of any significance. In *Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788 (1980), we held that the adoption of the comparative negligence statute has abrogated the concept of indemnification based upon the separation of negligence into active and passive classifications. In its stead, we announced the adoption of comparative implied indemnity. We said:

"We conclude that now is the proper time under the facts of this case to adopt a form of comparative implied indemnity between joint tortfeasors. When as here a settlement for plaintiffs' entire injuries or damages has been made by one tortfeasor during the pendency of a comparative negligence action and a release of all liability has been given by plaintiffs to all who may have contributed to said damages, apportionment of responsibility can then be pursued in the action among the tortfeasors.

. . . .

"This court concludes that in comparative negligence cases when full settlement of all liability to an injured party has been accomplished and a release obtained, proportionate causal responsibility among the tortfeasors should be determined and indemnity should be decreed based on degree of causation of the respective tortfeasors." 228 Kan. at 460, 461-462.

K.S.A. 60-258a(*c*) provides a mechanism for bringing into a comparative negligence action other parties whose causal negligence is claimed to have contributed to the injury or damage. That statute was followed, and on motion of the railroad additional parties defendant were joined, in *Ellis v. Union Pacific R. R. Co.,* 231 Kan. 182, 643 P.2d 158 (1982). Neither plaintiff nor the railroad asserted claims against the additional defendants, and the statute of limitations ran against all such claims. The railroad settled with the plaintiff and secured a release of *all parties.* The railroad then sought indemnity from the additional defendants under the concept of comparative implied indemnity as announced and adopted in *Kennedy.* In *Ellis* we held that the railroad, by settling the claim on behalf of all parties, could not

broaden the liability of defendants against whom no claim was asserted. We affirmed the order of the trial court dismissing the railroad's claim for comparative implied indemnity. *Ellis*, of course, was not an FELA case.

We have consistently held that all issues of liability, including the causal negligence or fault of all parties to an occurrence, should be determined in one lawsuit, whether the participants are all formally joined as parties to that lawsuit or not. *Brown v. Keill*, 224 Kan. 195; *Eurich v. Alkire*, 224 Kan. 236, 579 P.2d 1207 (1978); *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981); and *Lester v. Magic Chef, Inc.*, 230 Kan. 643, 641 P.2d 353 (1982).

As discussed earlier, the trial court dismissed the railroad's cross-claim against James, and it refused to submit the issue of James' fault to the jury. The verdict form submitted to the jury required it to determine the total damages sustained, whether the railroad, the plaintiff, or both, were causally negligent, and the percentage of the total fault attributable to the plaintiff. It did not call for a determination of James' negligence. The railroad contends that this was error; that the issue should have been submitted; and that under *Kennedy* it is entitled to recover over against James or, under the terms of the Release and Indemnification Agreement, to receive a credit on the judgment for the dollar amount of the judgment proportionate to James' percentage of causal fault. Plaintiff and James contend that Kansas law is not applicable; that *Kennedy* is limited to its facts and inapplicable here; and that the Kansas rule which prohibits contribution among joint tortfeasors and which limits implied indemnity to the active-passive doctrine is still applicable to cases such as this, and that under those rules the railroad is entitled to nothing.

As we have stated, any right of recovery over against third-party tortfeasors by the railroad is dependent upon Kansas law; it is not provided by FELA. Further, the concept of indemnification based on passive-active negligence is no longer available to a joint tortfeasor as a means of recovering all or part of the loss.

Our comparative negligence statute is designed to place the loss upon those who cause it. A railroad or other carrier, under FELA, must bear all of the loss sustained by an employee which is caused jointly by the fault of the carrier and third persons. The carrier is then placed in the position of one who has settled a loss

caused in part by another. This is analogous to the situation in *Kennedy*. We hold that a carrier against whom suit is brought under FELA for injuries sustained by an employee within this state should have and does have a right of contribution or comparative implied indemnity, under Kansas law, against a third party tortfeasor, once it is established (1) that the third party's negligence partially caused or contributed to the injury and damage, (2) that the carrier has some causal negligence, and (3) that the injured employee's causal negligence is less than 50% of the total causal negligence. We further hold that the causal fault or negligence of all parties, including the contributory negligence of the plaintiff and the negligence of the carrier and any third parties, should be submitted to the jury and the percentage fault of each determined in one lawsuit.

We hold also that the right of a carrier, defendant in an FELA case, to seek contribution or "comparative implied indemnity," as delineated above, from a third-party tortfeasor does not depend upon whether a claim is asserted against the third party by the injured employee. In order to assert its right against a third party, a carrier must bring the third party into the lawsuit, by means of K.S.A. 60-258a(*c*) or otherwise (if the third party is not already in the lawsuit), and must assert a claim for contribution or "comparative implied indemnity" against the third party before the running of the statute of limitations, so that the third party will be aware that he or she may be subjected to monetary liability and can appear and defend against such claim. Mere joinder of a third party under K.S.A. 60-258a(*c*) is not enough, as pointed out in *Ellis;* in addition to joinder, a claim must be asserted against the third party. In the case at hand, the third party, James, was a defendant, and claims were asserted against him in timely fashion by both plaintiff and the carrier.

The application of our comparative negligence statute so as to determine the comparative fault of third parties and the amount of recovery over to which a carrier is entitled, all in the same lawsuit, will not interfere with, lessen, or destroy the right of the employee against the carrier granted by FELA, nor will it diminish the obligation of the carrier to the employee. It provides a simple, single procedure for the determination of all rights and obligations arising out of the occurrence. In this case, James was

made a defendant by the plaintiff; the railroad did not bring him in. It did, however, assert a claim over against him.

We next consider the settlement with James, and the effect of the release. The latter is known as a "Pierringer release" because of its similarity to the release found in the case of *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963). The basic elements of such a release are stated in *Frey v. Snelgrove,* 269 N.W.2d 918, 920, n. 1 (Minn. 1978), as follows:

"(1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence; (2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the nonsettling parties and to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released."

This type of release is based on the premise that each tortfeasor is liable only for that portion of the loss occasioned by his or her percentage of the total causal negligence. In *Pierringer,* the court held that in spite of the release, the negligence of the settling defendant should be submitted to and determined by the jury during trial of an action against the nonsettling defendant. See also *Lines v. Ryan,* 272 N.W.2d 896, 902 (Minn. 1978), and *Nagunst v. Western Union Telegraph Co.,* 76 F.R.D. 631 (D. Kan. 1977).

In the case at hand, James "bought his peace" by the payment of $50,000 for all injury and damages caused by his proportionate share of the causal negligence. Thereafter, no judgment could be entered in favor of Gaulden and against James on the claim asserted by Gaulden in this lawsuit, and the trial judge properly dismissed his claim against James. Gaulden, by virtue of the release and indemnification agreement, released and discharged that portion and percentage of his total cause of action and claim for damages corresponding to the percentage of causal negligence of James, and agreed to indemnify James for any judgment over against him by the railroad. The trial court properly dismissed James as a party defendant, since his further presence in the litigation would serve no useful purpose. James has paid his proportionate share of the plaintiff's damages, and has protected himself from further liability by the release and indemnification agreement. It matters not to James whether a jury hereafter determines his proportionate part of the total causal negligence to

be 1% or 100%. Whatever percentage, James has settled and paid for the damage attributable to him.

The trial court erred, however, in failing and refusing to submit the issue of James' negligence to the jury. Plaintiff has already acknowledged receipt of that portion of his damages caused by James' proportionate share of the causal negligence. Under the terms of the release, plaintiff did "release and discharge that fraction and portion and percentage of his total causes of action and claim for damages *against all parties* [in this case] . . . which shall . . . be determined to be the sum of portions or fractions or percentages of causal negligence for which . . . [James is] found to be liable and responsible in causing said accident . . . ." (Emphasis supplied.)

Plaintiff is not entitled to make double recovery for that portion of his injuries and damage caused by the negligence of James. Plaintiff has volunarily chosen to accept payment for that part of his damages from James. Absent the settlement and release, plaintiff would be entitled under FELA to recover from the railroad for all of his injuries, except that portion caused by his contributory negligence. Under the facts of this case, however, plaintiff's sole remaining claim is against the railroad for that portion of his damages caused by and attributable to the causal negligence of the railroad. Upon retrial, the jury must determine the plaintiff's damages, and the proportionate share of the total negligence attributable to plaintiff, to James, and to the railroad. Judgment should then be entered for plaintiff and against the railroad for that proportionate share of plaintiff's damages attributable to the railroad's negligence.

We hasten to point out that such disposition is mandated only because of the release, which makes this case unique. Had there been no release, the jury should have been directed to determine the total damages and the proportionate causal negligence of the plaintiff, James, and the railroad; judgment would then have been entered for plaintiff and against the railroad for all of his damages except that attributable to his contributory negligence, and judgment over would have been entered in favor of the railroad and against James for that portion of the damages attributable to James' proportionate share of the total causal negligence.

The appellant complains of certain trial errors. It contends that the trial court erred in admitting into evidence a computer print-

out, for the reason that counsel had not been furnished a copy in advance. This issue will not recur on retrial and therefore we need not decide it.

Next, appellant contends that the trial court erred in its damage instruction by permitting the jury to consider medical expenses. The railroad contends that it had already paid those items. The evidence of payment is not clear. The railroad offered no direct evidence of payment, and attempted to establish payment through cross-examination of Mr. and Mrs. Gaulden. Mrs. Gaulden did not know whether the expenses were paid by the railroad or not, and Mr. Gaulden testified that reimbursement for certain expenses was not forthcoming. Apparently this issue was much disputed. If direct payment was made by the railroad, it may be entitled to set off such sums under 45 U.S.C.A. § 55; if payment was made by insurance procured by the carrier, then only the premiums paid, and not the insurance proceeds, may be the subject of setoff. See *Blake v. Delaware and Hudson Railway Company,* 484 F.2d 204 (2nd Cir. 1973). Upon the state of the record, however, the trial court did not err in permitting the jury to consider medical expenses.

Finally, the railroad contends that the trial court erred in admitting testimony of an altercation between plaintiff and a railroad employee, which occurred in the railroad offices shortly before trial. The railroad contends that evidence was not relevant and was introduced for the sole purpose of injecting passion and prejudice in the minds of the jurors. The difficulty with this claim is that the sole objection to this evidence at trial was made on the basis of hearsay, and that objection was properly overruled by the trial court. No objection was made on the grounds that the testimony was not relevant, or that it would prejudice the jury against the defendant. A specific objection as required by the contemporaneous objection rule, K.S.A. 60-404, was not interposed. Error cannot be predicated on the admission of this evidence in the absence of specific objection at trial on the grounds now urged.

Under all of the circumstances disclosed by this record, we conclude that the case must be retried. The judgment is reversed and the cause remanded to the district court for further proceedings in conformity with this opinion.

FROMME, and HERD, JJ., not participating.

SCHROEDER, C.J., concurring. I agree with the decision of the court to reverse the judgment of the trial court and to remand the case for a new trial on all issues, including the extent of plaintiff's damages and for a determination of the proportionate part of the plaintiff's damages attributable to Jack James, by superimposing the Kansas comparative negligence statute on this Federal Employers' Liability Act case.

It must be conceded this is a unique case to set guidelines for proportional contribution in a comparative negligence action. The controlling facts must be clearly understood to avoid misconstruing the opinion written for the court. The precise issues determined are quite narrow.

First, the action was filed by the plaintiff, an employee of the Burlington Northern, Inc. (the railroad), pursuant to the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 *et seq.* This federal statute initially imposes *all liability on the railroad* for an injured employee if the injury resulted *in whole or in part from the negligence of the railroad,* except that the total damages are to be diminished in proportion to the amount of negligence attributable to such employee.

Second, the plaintiff in his petition sued not only the railroad but Jack James, the driver of the pickup truck involved in the railroad crossing accident, seeking recovery for his damages from both defendants.

Third, the railroad, in a timely responsive pleading, asserted a cross-claim against James, contending James was liable to the railroad for any sum the plaintiff might be awarded against the railroad in this action under K.S.A. 60-213(*g*). James subsequently settled with the plaintiff for his proportionate share of the causal negligence contributing to the plaintiff's damages and was given a full release for his liability to the plaintiff in a written document known as a "Pierringer Release," quoted and discussed in the court's opinion. This release is a contract framed under comparative negligence principles binding on the plaintiff and James.

On this state of the pleadings and upon the foregoing facts *James was on notice from the very beginning of the lawsuit that both the plaintiff and the railroad could subject him to monetary liability.* This clearly distinguishes the case from *Ellis v. Union Pacific R.R. Co.,* 231 Kan. 182, 643 P.2d 158, *aff'd on rehearing*

232 Kan. 194, 653 P.2d 816 (1982). As in *Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788 (1980), given the adoption of notice pleading, third-party practice pleadings pursuant to K.S.A. 60-213(*g*) and 60-214(*a*) are sufficient in form and content to raise questions of comparative negligence under K.S.A. 60-258a as to a party served with third-party pleadings. Third-party pleadings under these provisions comport with concepts of due process and are sufficient under *Ellis* to subject a third-party defendant to liability for a claim of proportionate contribution, because the third-party defendant is placed on notice that monetary recovery is sought from him in addition to a determination of his proportionate fault, thus affording the third-party defendant an opportunity, if so desired, to participate in discovery and other pretrial proceedings. The cross-claim filed by the railroad against James was sufficient to assert a claim under K.S.A. 60-258a(*c*), serving as a motion to have James "joined as an additional party to the action."

Under these facts and circumstances it is proper, in my opinion, in a negligence action to recognize the doctrine of proportional contribution as an inherent part of the comparative negligence statute. Accordingly, James can be held monetarily liable to the railroad for his proportional part of the causal negligence attributable to the plaintiff's damages.

Unfortunately the court holds the ruling of the trial court dismissing James from the action is proper. With this position I cannot agree. An action was filed against James by the plaintiff in the initial pleadings, making him one of the original parties to the lawsuit. In addition, a separate claim was filed against James by the railroad under 60-213(*g*). As discussed above, this was sufficient under the comparative negligence statute to assert a claim against James for comparison of fault and potential liability for proportionate contribution. James' settlement with the plaintiff only released him from liability for the negligence claim asserted by the plaintiff in his pleadings and to save James harmless in the event the railroad recovered from James for his proportionate share of the negligence. This agreement did not operate to release James from the claims for comparison of fault and proportionate contribution effectively asserted against him by the railroad in its cross-claim. Despite the release and indemnification agreement entered into by James and the plaintiff, James continued to be a

*party to the action,* if the clear and unambiguous language in 60-258a(*c*) is to be given effect, because the claim under 60-258a(*c*) asserted against James by the railroad continued to exist. A claim asserted under 60-213(*g*) or 60-214(*a*), which places a third-party defendant on notice of potential liability for proportionate contribution under comparative negligence principles, renders the third-party defendant a *party to the action* under 60-258a(*c*) for purposes of comparison of fault and liability for proportionate contribution under *Kennedy.* This status is not destroyed because the plaintiff and third-party defendant enter into a settlement contract *as between them.*

It seems inconsistent to say James was properly dismissed from the action as a party, and then reverse the judgment of the trial court on the ground that the trial court failed and refused to submit the issue of James' negligence to the jury. In reversing the trial court the case is remanded for a new trial on all issues, with James' negligence to be submitted as an issue for jury determination under comparative negligence principles. Keeping James in the action as a party would not change his liability to the plaintiff, because James paid his proportionate share of the plaintiff's damages and protected himself by the release and indemnification agreement. The plaintiff would not be able to recover twice from James. Under 60-258a(*c*), the defendant railroad having asserted a cross-claim puts the defendant James on notice of potential liability, and the railroad is entitled to have James remain as a party in the lawsuit regardless of James' settlement with the plaintiff. This permits all issues of liability and damages to be litigated within the context of the original lawsuit where all potentially responsible parties are available. Whether James continues to retain counsel to represent him as a party in the action, however, is a matter entirely within his discretion.

I concur in the result reached by the court. The court directs that upon retrial the jury determine the plaintiff's damages, and the proportionate share of the total negligence attributable to the plaintiff, to James, and to the railroad; and that judgment should then be entered for the plaintiff and against the railroad for that proportionate share of plaintiff's damages attributable to the negligence of the railroad. I do not agree that James was properly dismissed as a party from the lawsuit. Under the comparative negligence statute James is a party to the action.