No. 113,156

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WATCO COMPANIES, INC., d/b/a SOUTH KANSAS AND OKLAHOMA RAILROAD,
*Appellant*,

v.

SHANE CAMPBELL and JERRY STANDLEE,
*Appellees*.

SYLLABUS BY THE COURT

1.

Documents obtained through a request for production of documents may, in the court's discretion, be relied upon as authentic for purposes of a summary judgment motion because the method in which they are obtained lends them credibility.

2.

Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo.

3.

The district court's reasons for granting or denying summary judgment are immaterial if the ruling was correct for any reason.

4.

Comparative implied indemnity or, as it is more accurately termed, postsettlement contribution describes the cause of action initiated by a tortfeasor in a negligence lawsuit to recover from a joint tortfeasor the share of the damages proportional to the joint tortfeasor's fault.

1

5.

When total damages have not been fixed by judicial proceeding but by compromise and settlement between the plaintiff and a defendant, the amount the defendant has paid in full settlement for all damages is the maximum amount subject to be apportioned among joint tortfeasors.

6.

A carrier against whom suit is brought under the Federal Employers' Liability Act (FELA) for injuries sustained by an employee within Kansas has a right of contribution or comparative implied indemnity against a third-party tortfeasor if (1) the third party's negligence partially caused or contributed to the injury or damages, (2) the carrier had some causal negligence, and (3) the injured employee's causal negligence is less than 50%.

7.

In order for a tortfeasor to pursue a claim of contribution or comparative implied indemnity against a joint tortfeasor who was not sued by the plaintiff, the tortfeasor must join the joint tortfeasor as a third party under K.S.A. 2015 Supp. 60-258a(c) and assert a timely claim against the joint tortfeasor.

8.

Although the comparison of fault of all wrongdoers should be effected in the original action, there is an exception when there has been no judicial determination of comparative fault in the first action.

9.

Comparative implied indemnity, or postsettlement contribution, is an equitable remedy.

10.

The clean hands doctrine bars a party from obtaining relief in equity with respect to a transaction in which the party has been guilty of inequitable conduct.

11.

When a sliding-scale or "Mary Carter" settlement agreement is entered which calls for the settling defendant to remain in the litigation, the existence and terms of the agreement must be disclosed to the court and remaining litigants.

Appeal from Crawford District Court; JEFFRY L. JACK, judge. Opinion filed April 1, 2016. Affirmed.

*Kenneth E. Barnes* and *Kyle S. Belew*, of The Barnes Law Firm, of Kansas City, Missouri, and *Daniel F. Church*, of Morrow Willnauer Klosterman Church, LLC, of Kansas City, Missouri, for appellant.

*Dana M. Harris* and *Matthew W. Greenberg*, of Harris & Hart, L.L.C., of Leawood, for appellees.

Before HILL, P.J., MCANANY and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: To quote federal Magistrate Judge James O'Hara, who was the judge to hear the federal court proceedings regarding this matter, "[t]his is a very simple personal injury case gone seriously awry." *Fox v. Watco. Companies, Inc.*, Case No. 09-CV-2078-JPO, filed in United States District Court for the District of Kansas, Order dated April 25, 2011 (entering consent judgment and dismissing federal case). The case involves a collision between a truck and a train, where the train conductor was injured. After Magistrate Judge O'Hara dismissed the federal case and Watco filed an action in Crawford County for comparative implied indemnity, the district court subsequently granted summary judgment in favor of the defendants Shane Campbell and

3

Jerry Standlee. The district court granted defendants' motion on two separate grounds, finding that the plaintiff, Watco Companies, Inc. (Watco), came into the litigation with unclean hands and it was not the real party in interest. Watco appeals. Because we find that Watco's conduct justifies a finding of unclean hands, we affirm the district court's dismissal of this action.

FACTUAL AND PROCEDURAL BACKGROUND

Jack Fox was working as a conductor on a train owned and operated by Watco. Shane Campbell was driving a commercial water delivery truck owned by Jerry Standlee. Campbell was looking at his phone as he approached the intersection with the railroad tracks and failed to stop and yield to the approaching train, causing a collision. At the time, Watco employees were involved in pushing freight cars through the intersection as part of a switching and coupling operation. Fox was riding on a railcar as it approached the tracks. He was injured in the collision and filed suit against Watco, in federal court, under the Federal Employers' Liability Act (FELA). The suit alleged that Watco's negligence in failing to provide proper working radios and flagmen at the crossing contributed to Fox's damages. Watco then asserted a third-party claim against both Campbell and Standlee. Watco claimed damages to its train and equipment, including downtime as a result of Campbell's negligence. In addition, Watco sought judgment against Campbell and Standlee (Defendants) in the amount of any judgment that Fox may obtain against Watco, but Fox did not amend his complaint to assert claims against Defendants and continued to assert claims solely against Watco.

Prior to trial in that case, Fox and Watco reached a settlement. As part of the agreement, a consent judgment was entered against Watco in the amount of $962,037. In addition to the consent judgment, Fox and Watco entered into an agreement to stay execution of the judgment (Agreement). The terms of the Agreement required Watco to pay Fox $200,000 in exchange for Fox's agreement not to execute on the remaining

4

outstanding amount of the consent judgment unless or until Watco was able to recover from Defendants. The Agreement also established a payment schedule. If Watco was only able to recover $100,000 or less, all monies recovered would, after expenses were deducted, go straight to Fox. If Watco was able to recover more than $100,000 but less than $300,000, Fox would receive the first $100,000 recovered and then Fox and Watco would split the remainder evenly. If more than $300,000 was recovered, Watco would keep the first $200,000, then Fox would receive the remainder. Under the Agreement, there was no situation in which Watco would be required to pay Fox more than the $200,000 it initially paid.

After the Agreement was entered, the federal district court dismissed the remaining third-party claim between Watco and Defendants without prejudice. Watco then filed the present action in state court seeking comparative implied indemnity from Defendants for the amount of the consent judgment, $962,037, and $1,249.92 for damages and downtime to its train.

Defendants filed a motion for summary judgment on the basis that Watco had unclean hands, was barred from recovery by the doctrine of *in pari delicto*, was not the real party in interest, and was not entitled to recovery because the Agreement violated federal law. The district court granted Defendants' motion, finding Watco in violation of the clean hands doctrine and finding that it was not the real party in interest. Watco now appeals.

ANALYSIS

*Standard of review*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no

5

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014). Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). In addition, the district court's reasons for its decision on a summary judgment motion are immaterial if the ruling was correct for any reason. *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 421, 109 P.3d 1249 (2005) (citing *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, Syl. ¶ 3, 863 P.2d 364 (1993). There is no dispute regarding any genuine issue as to any material fact in this case.

*Consideration of certain evidence in support of summary judgment*

As a preliminary matter, Watco argues that the district court should not have considered the Agreement in rendering its decision. Specifically, Watco argues that reliance on the Agreement was erroneous because the document was not properly authenticated as required by K.S.A. 60-464 and was therefore inadmissible as evidence in support of summary judgment. After a thorough review of the cases cited by Watco, we reject its argument.

K.S.A. 2015 Supp. 60-256(c)(2) instructs that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and the movant is

6

entitled to judgment as a matter of law." Kansas courts often restate the rule as: """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.""" *Stanley Bank*, 298 Kan. at 759. But we note that the phrase often recited in Kansas cases does not contain an exclusive list of the evidence a court may consider when ruling on a summary judgment motion. The statute indicates that in addition to the evidence cited in *Stanley Bank*, courts may consider other discovery and disclosure materials on file as well as "sworn or certified" copies of documents referenced in affidavits or declarations. K.S.A. 2015 Supp. 60-256(c)(2), (e)(1). Clearly, the Agreement was part of the discovery materials in the case, provided to Defendants from Watco. It was attached as an exhibit to the Defendants' Answer, it weighed prominently in federal Magistrate Judge O'Hara's order dismissing the case filed in federal court, and Watco admitted in interrogatories filed in this case that it had provided the Agreement to Defendants and would provide additional copies if needed. Watco has never challenged the veracity of the multiple copies of the Agreement included in the record, nor does it question its existence. We can conceive of no reason why the Agreement would not be appropriate to consider in ruling on a summary judgment motion.

Not to be deterred, Watco also argues that Kansas Supreme Court Rule 141(d) (2015 Kan. Ct. R. Annot. 242) limits submissions in support of summary judgment to material that is admissible in evidence by authorizing objection to material that is not "presented in a form that would be admissible in evidence." K.S.A. 60-464 governs the authentication of documents generally. The statute instructs that "[a]uthentication of a writing is required before it may be received in evidence." K.S.A. 60-464. However, the proper method for authenticating a document is vague. The statute merely states that "[a]uthentication may be by evidence sufficient to sustain a finding of its authenticity or by any other means provided by law." K.S.A. 60-464. Federal Rule of Evidence 901(a)

7

contains similar language stating that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Federal courts have recognized that documents obtained through a request for production of documents may, in appropriate cases, be relied upon as authentic because the method in which they are obtained lends them automatic credibility. See *Anderson v. Cramlet*, 789 F.2d 840, 845 (10th Cir. 1986); *In re Greenwood Air Crash*, 924 F. Supp. 1511, 1514 (S.D. Ind. 1995) ("Production of a document by a party constitutes an implicit authentication of that document."). In this case, the district court had no reason to believe the Agreement was not authentic. Nor do we.

Having established that the Agreement was properly considered by the district court, we turn to the primary issue on appeal: whether the district court erred in granting Defendants' motion for summary judgment.

*Comparative implied indemnity in general*

The current cause of action against the Defendants appears to be solely for comparative implied indemnity for damages to its train and its employee Fox. So we must first examine this legal concept and its origin.

Prior to the adoption of its current scheme of comparative fault, Kansas adhered to the common-law rule of joint and several liability between tortfeasors and, with a few exceptions, contributory negligence by a plaintiff was a complete bar to recovery when pleaded and proved by a defendant. If a plaintiff sued and recovered against two tortfeasors, plaintiff could collect the whole judgment from either. It would then be up to the paying tortfeasor to bring an action against the nonpaying tortfeasor for contribution of 50%. *Brown v. Keill*, 224 Kan. 195, 198, 580 P.2d 867 (1978). In 1974, the Kansas Legislature adopted K.S.A. 60-258a which abolished contributory negligence as a bar to

8

recovery. Instead, the awarding of damages was to be based on the comparative fault of all parties. The statute allowed a defendant to join any party to the action that the party believed to have contributed to the injury or damages. Parties were only responsible for damages related to their proportional share of the negligence. The statute required that the plaintiff's negligence must be less than the causal negligence of the party or parties against whom claim for recovery is made and the award of damages to any party must be diminished in proportion to the amount of negligence attributed to such party. K.S.A. 2015 Supp. 60-258a(a). This is often called the 49% rule, meaning the plaintiff's negligence must be 49% or less for recovery.

The term comparative implied indemnity was first coined by our Supreme Court in *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980). Kennedy owned pasture land in the City of Sawyer (City), on which he grazed cattle. The City owned adjoining property on which it sprayed arsenic-laced herbicide that resulted in the death and injury of Kennedy's cattle. Kennedy sued the City for negligence. The City filed a third-party petition against Continental Research Corporation, which sold it the herbicide, alleging Continental negligently manufactured and distributed the herbicide, breached its implied warranties to the City including the implied warranties of merchantability and warranty of fitness for a particular purpose, and was strictly liable for shipping a dangerous and defective chemical to the City. Continental then filed a third-party petition against Huge Company, the actual manufacturer of the herbicide, essentially alleging the same negligence the City alleged against Continental. The district court dismissed Continental and Huge from the action and denied the City any claim for comparative fault. The City appealed. During the pendency of the appeal, the City and Kennedy settled for $29,000.

Under the doctrine of strict liability, the liability of a manufacturer (Huge) and those in the chain of distribution (Continental) extends to those individuals to whom injury from a defective product may reasonably be foreseen. The court believed the joinder of Continental and Huge certainly raised an issue of strict liability, but when

9

Kennedy dismissed the only claim he had, the one against the City, the court was perplexed about how to treat the remaining third party and the strict liability and indemnity claims. See *Kennedy*, 228 Kan. at 446. The court posed the question of whether comparative negligence principles should be applied to strict liability actions and whether indemnity might be recovered.

The court noted that with the settlement of Kennedy's claim, the comparative negligence questions became secondary to the indemnity issue. 228 Kan. at 448. The City sought indemnity from Continental, and Continental sought indemnity from Huge. They were each seeking to be reimbursed for 100% of the damages. "Traditional implied indemnity, such as that sought by the city in this case, implies a shifting of 100% of a loss from the indemnitee to the indemnitor." 228 Kan. at 454. The court distinguished indemnity from the theory of contribution. Contribution shifts only a part of the loss to another. 228 Kan. at 454. Again, the court struggled with how to apply these traditional indemnity concepts to a comparative fault scheme.

The court noted two types of indemnity, express and implied. Express indemnity is when an express contract of indemnity, like a hold harmless agreement, exists. Implied or constructive indemnity implies a contract of indemnity "when one is compelled to pay what another party ought to pay." 228 Kan. at 454-55. The court used the example of the liability of a principal for actions of an employee. But it also classified the case before it as implied indemnity, *i.e.*, "when the fault of one defendant may be classified as 'active' and that of the other as 'passive.'" 228 Kan. at 455. The court noted that the City classified itself as the passive or secondary negligent party, whereas Continental was the active or primary negligent party. 228 Kan. at 455. But, the court opined, it is difficult to determine the active/passive, primary/secondary dichotomy in any given case, and the theory still distributes loss on an all or nothing basis. The court concluded that this dichotomy no longer served any purpose in a comparative liability context. It was time to

10

adopt what it called comparative implied indemnity between joint tortfeasors and described it as follows:

> "When as here a settlement for plaintiffs' entire injuries or damages has been made by one tortfeasor during the pendency of a comparative negligence action and a release of all liability has been given by plaintiffs to all who may have contributed to said damages, apportionment of responsibility can then be pursued in the action among tortfeasors." 228 Kan. at 460.

The court went on to outline how an action for comparative implied indemnity needed to proceed. The same rules hold true today, with a few noted modifications.

- *The One-Action Rule*—The comparison of fault of all wrongdoers should be effected in the original action. 228 Kan. at 460; see also *Gaulden v. Burlington Northern, Inc.*, 232 Kan. 205, 214, 654 P.2d 383 (1982) (percentage of fault should be submitted to the jury and determined in one lawsuit). But if settlement occurs before a timely comparative negligence action has been filed, "the settling tortfeasor may then and in that event file an action in court to have the degrees of responsibility among joint tortfeasors determined, damages assessed and apportionment decreed among them." *Kennedy*, 228 Kan. at 461; see also *Mick v. Mani*, 244 Kan. 81, 93, 766 P.2d 147 (1988) (Although the determination of contribution should be made in original action, plaintiff may pursue separate actions against joined tortfeasors where there has been no judicial determination of comparative fault. It is more accurately described as one-trial rule, instead of one-action rule.).

- *Timely Claim Against Joined Party*—The maintenance of a claim by the plaintiff against a joined party "is not a prerequisite to securing comparison." *Kennedy*, 228 Kan. at 460. But the defendants have the responsibility "to bring into the action all

11

tortfeasors against whom comparative liability through indemnity is sought." 228 Kan. at 460-61. Once a third party is joined under K.S.A. 2015 Supp. 60-258a(c), the defendant must assert a claim for contribution or comparative implied indemnity against the third party before the running of the statute of limitations. This requirement insures that the third party is aware that he or she may be subjected to monetary liability and can appear and defend against the claim. Mere joinder is not enough. In addition a timely claim must be asserted against the third party. *Gaulden*, 232 Kan. at 214; see also *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 637, 205 P.3d 1265 (2009) (standard was not whether the plaintiff could have brought an action against the joint tortfeasor in the initial suit, but whether it had done so); *Teepak, Inc. v. Learned*, 237 Kan. 320, 325-26, 699 P.2d 35 (1985) (cannot make a claim for comparative implied indemnity when person against whom defendant seeks contribution was not joined as a party).

- *Settlement*—The court must first determine the fault of the plaintiff to determine if it is less than 50%. See K.S.A. 2015 Supp. 60-258a(a). If the plaintiff's causal negligence is 50% or more, there is no right to recover against any of the joined defendants because of a failure to establish actual legal liability. *Kennedy*, 228 Kan. at 461. If the total damages are less than the settlement amount, the judge will determine the contribution. 228 Kan. at 461. If the "reasonable amount of damages" are more than the settlement amount, "all tortfeasors will receive the benefit of the bargain struck by the settling defendant." 228 Kan. at 461. The amount the defendant has paid in full settlement is the maximum amount subject to be apportioned. The settling tortfeasor is required to establish the reasonableness of the amount of the settlement and that it represents "an actual legal liability he or she could not be expected to successfully resist." 228 Kan. at 461. The settling tortfeasor may be required to establish his or her case against the

12

joint tortfeasors in the same way the plaintiff would have been obligated to do. 228 Kan. at 461. A settling defendant cannot create liability where this is none.

> "One defendant in a comparative negligence action cannot settle a claim on behalf of a party against whom the plaintiff could not recover and then seek contribution from that party in proportion to the percentage of causal negligence attributable to that party. The plaintiff may choose to forego any recovery from other tortfeasors. In that event, a settling defendant has no claim to settle but his own." *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 192, 643 P.2d 158, *aff'd on rehearing* 232 Kan. 194, 653 P.2d 816 (1982).

Over the next 25 years, additional clarifications were adopted by various Kansas courts.

- *Postsettlement Contribution More Accurate Term*—The term comparative implied indemnity is not appropriate when the action is one for postsettlement contribution, not indemnity. The term indemnity contemplates shifting 100% of the loss from one tortfeasor to another, whereas contribution contemplates shifting only a portion of the loss for one tortfeasor to another. The more accurate term is postsettlement contribution. *Ellis*, 231 Kan. at 184-85; see also *Dodge City Implement, Inc.*, 288 Kan. at 632 ("comparative implied indemnity, or, as it is more accurately termed, postsettlement contribution").

- *Right to Contribution in a FELA Case*—A railroad's right to recover indemnity or contribution from a third party for liability incurred under FELA depends entirely on state law, and Kansas provides such a right to recovery. *Gaulden*, 232 Kan. at 211-12.

- *Procedure at Trial*—Similar to the procedure set out in *Kennedy* for determination of contribution when there is a settlement, in pursuing a claim for contribution the

defendant must establish (1) that the third party's negligence partially caused or contributed to the injury and damages, (2) that the defendant has some causal negligence, and (3) that the plaintiff's causal negligence is less than 50% of the total causal negligence. See *Gaulden*, 232 Kan. at 214.

- *Statute of Limitations*—A comparative implied indemnity claim must be made within the 2-year statute of limitations set out in K.S.A. 60-513(a)(4). The time to bring a claim begins running when the underlying fault cause of action accrues. *Reeve v. Union Pacific R. Co.*, 790 F. Supp. 1074, 1079 (D. Kan. 1992); see also *Med James, Inc. v. Barnes*, 31 Kan. App. 2d 89, 99, 61 P.3d 86 (2-year statute of limitations for comparative implied indemnity), *rev. denied* 275 Kan. 965 (2003).

- *Equitable Remedy*—Comparative implied indemnity, or postsettlement contribution, is an equitable remedy. *Schaefer v. Horizon Bldg. Corp.*, 26 Kan. App. 2d 401, 403, 985 P.2d 723 (1999).

*We apply the principles of comparative implied indemnity, or postsettlement contribution, to the facts of this case.*

Watco sued Defendants in state court for the following: physical damage to Watco's train and equipment, including downtime, and the amount of the consent judgment entered in the United States District Court which it listed as $962,037, in addition to interest and fees. Defendants were never sued by Fox; and in fact, at the time of settlement any claim against them would have been barred by the statute of limitations. The consent judgement entered in the United States District Court case only involved Watco and Fox. The Agreement did not involve anyone except Watco and Fox. It did not release anyone but Watco from liability if the terms of the Agreement were fulfilled. Defendants did not challenge the Agreement in federal court, apparently because as a nonparty to the Agreement they originally believed they had no standing to do so. The

14

Agreement specifically referred to the action of *Watco v. Shane Campbell v. Jerry Standlee*, a case which only existed at the time of the settlement (March 7, 2011) in federal district court.

In his order dismissing the federal action, Judge O'Hara noted that he could retain supplemental jurisdiction over Defendants even though the federal claims were satisfied. He noted that Defendants had requested he do so, but they subsequently asked that he dismiss all claims against them based on the invalidity of the Agreement under FELA, even though they had made no motion to set aside the Agreement. Watco and Fox, on the other hand, argued that the federal court should retain supplemental jurisdiction. In April 2011, Judge O'Hara dismissed Watco's third-party action against Defendants. The decision to exercise supplemental jurisdiction is a matter of the court's discretion. See *Nielander v Board of County Com'rs*, 582 F.3d 1155, 1172 (10th Cir. 2009). There is no indication that Watco or Fox appealed that decision.

We begin by determining the appropriateness of this action based on the legally established rules regarding comparative implied indemnity set out in *Kennedy* and its progeny.

*Watco properly preserved its claim for comparative implied indemnity.*

Kansas recognizes Watco's right to pursue contribution for suits brought under FELA. See *Gaulden*, 232 Kan. at 211. Watco made a timely claim in federal court that the negligence of Defendants partially contributed to the injury or damages. Watco's claim for comparative implied indemnity was properly preserved.

*Because there was no comparison of fault in the federal action, an action in state court was proper.*

Although judicial efficiency would have been better served by pursuing the issue of comparative fault and contribution in the federal case, there is nothing untoward about the way this matter landed in state court. Although our Supreme Court has held that the comparison of fault of all wrongdoers should be effected in the original action, there is an exception when there was no judicial determination of comparative fault in the first action. *Mick*, 244 Kan. at 93. Because there was no comparison of fault in the federal action, Watco was able to file this action in state court. Accordingly, Watco was the real party in interest in the case.

*This case was timely filed.*

Although this action was not filed until July 1, 2011, well after the 2-year statute of limitations for property damage, negligence, and comparative implied indemnity contained at K.S.A. 60-513, K.S.A. 60-518 allows that "[i]f any action be commenced within due time, and the plaintiff fail[s] in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff . . . may commence a new action within six (6) months after such failure." The savings statute applies even if the first action was not filed in a Kansas state court. *Seabord Corporation v. Marsh Inc.*, 295 Kan. 384, Syl. ¶ 2, 284 P.3d 314 (2012). The action was dismissed against Defendants otherwise than on the merits and was dismissed without prejudice. Accordingly, Watco's claims are timely, having been timely filed in the federal court and then filed in the state court within 6 months of dismissal.

So that leaves us with the question of whether Defendants are entitled to summary judgment in state court on Watco's claim of postsettlement contribution for any reason. We believe they are.

*The doctrine of clean hands bars any recovery by Watco.*

Comparative implied indemnity, or postsettlement contribution, is an equitable remedy. *Schaefer*, 26 Kan. App. 2d at 403. The clean hands doctrine bars a party from obtaining "relief in equity with respect to a transaction in which he [or she] has, himself [or herself], been guilty of inequitable conduct." *Green v. Higgins*, 217 Kan. 217, 220, 535 P.2d 446 (1975). The doctrine is not a binding rule, but it may be applied by the district court at its discretion. 217 Kan. at 220. The clean hands doctrine should only be applied to bar relief where a party has acted fraudulently, illegally, or unconscionably. Additionally, application of the doctrine is only appropriate when the misconduct "bear[s] an immediate relation to the subject-matter of the suit and in some measure affect[s] the equitable relations subsisting between the parties to the litigation and arising out of the transaction." 217 Kan. at 221.

> "[I]n applying the clean hands maxim, courts are concerned primarily with their own integrity. The doctrine of unclean hands is derived from the unwillingness of a court to give its peculiar relief to a suitor who in the very controversy has so conducted himself as to shock the moral sensibilities of the judge. It has nothing to do with the rights or liabilities of the parties. In applying the unclean hands doctrine, courts act for their own protection, and not as a matter of 'defense' to the defendant. [Citation omitted.]" 217 Kan. at 221.

There can be no dispute in this case, no matter how hard Watco tries to create one, that based on the Agreement the most Watco will ever have to pay to Fox for damages is $200,000. And based on the amount of recovery Watco may not have to pay anything. As we noted, the Agreement referred to a case that *only* existed in federal court, so the application of the Agreement to this case is questionable, at best. But assuming it does apply to recovery in this state court action, we know from *Kennedy* that the amount the defendant has paid in full settlement for the claims against it is the maximum amount subject to be apportioned. 228 Kan. at 461. This makes sense. The purpose of

17

comparative fault legislation is to equate recovery and duty to pay to degree of fault. *Brown*, 224 Kan. at 203. In this case, Watco forcefully submits that the reasonable amount of damages is $962,037. But to allow Watco to collect more from Defendants than it would ever be required to pay itself runs afoul of the whole concept of contribution.

We pause to note that there was nothing illegal about the settlement agreement itself in this case. It can best be described as a sliding-scale, or "Mary Carter," agreement, so named after the case *Booth v. Mary Carter Paint Co.*, 202 So. 2d 8 (Fla. Dist. App. 1967). This type of agreement has the effect of guaranteeing the plaintiff a minimum recovery while limiting and potentially eliminating the settling defendant's liability. *In re Methyl Tertiary Butyl Ether Products*, 578 F. Supp. 2d 519, 532 (S.D.N.Y. 2008). The Tenth Circuit Court of Appeals outlined such agreements as follows:

> "'A typical Mary Carter agreement usually has the following features:
> A. secrecy
> B. contracting defendant remains in the lawsuit
> C. contracting defendant guarantees plaintiff a certain monetary recovery
> D. contracting defendant's liability is decreased in direct proportion to the increase in the non-agreeing defendants' liability.
> "'It is the last element that is unique to the "Mary Carter" agreement and creates the most unfair prejudice to the non-agreeing defendant and his right to a fair trial. Plaintiff is guaranteed a certain amount from one defendant regardless of the outcome of the verdict. In return that defendant receives the right to benefit from any joint verdict, or a verdict solely against the non-agreeing defendants. The agreeing defendant therefore partakes of direct interest in the outcome of the litigation. The normal adversary relationship between plaintiff and defendant becomes distorted, if not destroyed.'" *Hoops v. Watermelon City Trucking, Inc.*, 846 F.2d 637, 640 (10th Cir. 1988) (quoting *Cox v. Kelsey–Hayes Co.*, 594 P.2d 354, 357-58 [Okla. 1978]).

As the Fifth Circuit Court of Appeals noted however, "[t]he variety amongst different Mary Carter agreements is limited only by the creativity of defense lawyers." *Wilkins v. P.M.B. Systems Engineering, Inc.*, 741 F.2d 795, 798 n.2 (5th Cir. 1984).

In *Ratterree v. Bartlett*, 238 Kan. 11, 707 P.2d 1063 (1985), the only Kansas case examining these types of agreements, our Supreme Court approved the use of a Mary Carter agreement similar to the one at issue here. There, Ratterree sued multiple defendants for injuries she sustained in a car accident. Prior to trial, Ratterree entered into a settlement agreement with one of the defendants. Although the terms of the settlement agreement were not disclosed prior to trial, on appeal the appellants contended that the terms of the agreement were that the settling defendant would pay the plaintiff $50,000; however, if Ratterree were able to recover more than $150,000 from the remaining defendants at trial, the settling defendant's obligation to Ratterree would be reduced "dollar for dollar regardless of the actual verdict returned" against the defendant. 238 Kan. at 24. Additionally, the defendant agreed to remain in the litigation and appear as a defendant at trial.

Although there were some questions about the use of Mary Carter agreements in comparative fault situations as opposed to their more typical application in joint and several liability cases, the court approved the use of the sliding-scale agreement generally but was concerned about the potential for collusion and jury confusion when a defendant enters into such an agreement and remains in the case as a defendant at trial. In such a case the defendant's interests are more aligned with that of the plaintiff than with his or her codefendants. See 238 Kan. at 26-29. In order to reduce the risk of injustice, the court adopted the rule that when a sliding-scale settlement agreement is entered which calls for the settling defendant to remain in the litigation, the existence and terms of the agreement must be disclosed to the court and remaining litigants. 238 Kan. at 29. If the court feels it is necessary to prevent prejudice, it may then disclose the existence of the agreement to the jury. 238 Kan. at 29. The agreement would show bias both on the part of the injured

19

party and the settling defendant. They have a financial incentive to assist each other in pushing off as much liability as possible on the nonsettling defendants. Because there was no such disclosure in *Ratterree*, the court reversed the jury verdict and remanded the case for a new trial. 238 Kan. at 30. There have been no other Kansas cases dealing with such agreements.

In this case, the issue of damages has not yet gone to trial. There has not been a jury determination of damages or fault. Instead, Watco—without revealing the existence of the Agreement in its pleading—sought to recover contribution for damages that it knew it would never have to pay. The Agreement, by its terms, was secret. Watco agreed to a judgment against it for the full amount requested by Fox, even though the last joint settlement offer prior to entry of the consent judgment, as revealed in documents produced by Watco, was $175,000 and Fox had offered to settle for $425,000. Although Fox did not assign his rights to Watco (because he had no cause of action against Defendants to assign, the statute of limitations had run), the agreement provided that Fox's attorney would step in and represent Watco in the case, with the benefits of any excess judgement going to Fox. As Judge O'Hara noted in his order dismissing the case, this arrangement "raises a host of practical *and* ethical issues that Fox, Watco and, perhaps most importantly, their experienced trial lawyers, do not appear to have fully and carefully evaluated."

Moreover, rather than revealing the existence of the Agreement to the court from the outset as it was required to do under *Ratterree*, Watco fought its disclosure to the state court, including arguing in this appeal that it should *not* have been considered in ruling on the summary judgment motion. It filed a lawsuit seeking contribution for damages it would never be required to pay, as well as contribution for damages it may not have to pay at all. Although it was eventually, and understandably, brought to the court's attention by the defense, that does not cure Watco's misdeeds in this case.

20

After interpreting and analyzing the terms of the Agreement the district court held:

"7.      The language of the Agreement between Watco and Fox undermines the public policy of Kansas as set forth in the comparative negligence statute, which is intended to allocate payment of damages in proportion to a Defendant's proportionate share of liability. Watco's agreement with Fox, through which it seeks comparative implied indemnity from Defendant, is the product of inequitable, unfair, and deceitful conduct, as it is designed to minimize and potentially eliminate Watco's liability under Kansas tort law by manufacturing an artificial stipulation of damages. Under the inequitable agreement, Watco would never be liable for anything more than $200,000 to Fox, and would potentially pay Fox nothing.

"8.      Such an agreement wherein a party settles with the injured party essentially for $200,000, and yet seeks $962,037.00 from another party through comparative implied indemnity, is against public policy such that the application of the [clean] hands doctrine bars Plaintiff from recovery."

We agree that Watco's actions in this case are inequitable and unconscionable. Since the $175,000 settlement offer was a joint offer among all defendants in the federal case, it is hard to imagine there would have been a challenge by Defendants to the reasonableness of the $200,000 settlement payment, nor much of a dispute over contribution. But by seeking a clearly inflated amount of damages Watco has forced Defendants to litigate this case based on damages that are four times what Watco will ever have to pay and double what Fox offered to accept in settlement of his claims. It is clear that the sole purpose of these shenanigans was to erase its own liability rather than properly apportioning liability against joint tortfeasors and, through collusion with Fox's attorney, to assist Fox in getting a recovery for which he would otherwise not be entitled. If this were not enough, Watco's action of failing to advise the court of the agreement from the outset while continuing to seek the full $962,037 is the type of behavior that the clean hands doctrine was meant to address. Accordingly, the decision of the district court

21

dismissing the comparative implied indemnity (or postsettlement contribution) claim is affirmed.

Affirmed.